**STATE of Indiana, Appellant–Plaintiff,**

v.

**Samuel L. ESTEP, Appellee–Defendant.**

No. 49A05–0009–CR–371.

Court of Appeals of Indiana.

July 10, 2001.

Karen Freeman–Wilson, Attorney General of Indiana, Adam Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Ellen M. O'Connor, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

The State appeals the trial court's grant of Samuel Estep's Motion to Suppress evi-

dence seized during Estep's arrest in his residence. The State makes two allegations of error: first, that the trial court's ruling on Estep's Motion to Suppress was contrary to law, and second, that the trial court applied the wrong legal standard when reviewing the issuance of the search warrant.

We affirm.[1]

## FACTUAL SUMMARY

On March 10, 1999, Sheriff's deputies received a Crime Stopper tip that Samuel Estep was residing at 241 North Reisner Avenue in Indianapolis. Deputies had previously obtained a warrant to arrest Estep for aggravated battery; that warrant listed Estep's last known residence as 242 North Reisner Avenue. On March 10, 1999, armed deputies went to 241 North Reisner and knocked on the front door with guns drawn. Estep opened the solid wooden door and remained standing in the residence behind a closed storm door while a deputy showed him the warrant. Estep opened the storm door, and deputies entered and immediately arrested him. Deputies then conducted a sweep of the entire residence, and in the course of that sweep they saw certain items of contraband, including green vegetation, a handrolled cigarette, a scale, and a handgun.[2]

In addition, Estep had over $2,000.00 and some marijuana on his person.

Based on their findings, the warrant officers requested assistance from the narcotics unit, and narcotics detectives came to Estep's home. After viewing the items observed by the warrant officers, one of the narcotics detectives obtained a search warrant for the residence at 241 North Reisner. During the search of the residence, narcotics detectives found a baggie of rock cocaine and additional marijuana.[3] Estep was then charged with dealing in cocaine, a Class A felony; possession of cocaine, a Class C felony; dealing in marijuana, a Class D felony; and possession of marijuana, a Class D felony.[4]

Estep filed a Motion to Suppress all evidence seized at his residence, and the trial court granted that motion with respect to everything except the items found on Estep's person. The State moved to dismiss all counts against Estep, and that motion was granted. The State then brought this appeal.[5]

## STANDARD OF REVIEW

■■■■ On appeal from the grant of a motion to suppress, the State appeals from a negative judgment and must show the trial court's ruling on the suppression mo-

1. We heard oral argument at the Vanderburgh County Civic Center on May 3, 2001. We gratefully acknowledge the hospitality of the Evansville Bar Association, and we commend counsel for their capable advocacy.

2. Estep had a permit for the handgun.

3. The evidence presented at hearing on the Motion to Suppress was conflicting with regard to whether officers found the rock cocaine before or after they obtained the search warrant.

4. Ind.Code §§ 35–48–4–1, 35–48–4–6, 35–48–4–10, and 35–48–4–11.

5. The State brings this appeal under Ind.Code § 35–38–4–2(5) from an order granting a motion to suppress evidence. In so doing, the State represents that the ultimate effect of the order is to preclude further prosecution. See State v. Aynes, 715 N.E.2d 945, 948 (Ind.Ct. App.1999) (State's initiation of appeal under Ind.Code § 35–38–4–2(5) constitutes judicial admission that prosecution cannot proceed without the suppressed evidence). Here, while the trial court granted Estep's motion to suppress all evidence except items found on his person, the State dismissed all counts. The State is precluded from further prosecution based on evidence that was not suppressed.

tion was contrary to law. *State v. Farber,* 677 N.E.2d 1111, 1113 (Ind.Ct.App.1997). This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* This court neither reweighs the evidence nor judges the credibility of witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.*

█ When a trial court enters findings sua sponte, those findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Finucane v. Union Planters Bank, N.A.,* 732 N.E.2d 175, 177 (Ind.Ct.App.2000).

## DISCUSSION AND DECISION

█ Although the trial judge did not issue written findings, she did make the following statement when ruling on the Motion to Suppress:

[I]n this case the Defendant was at the door, opened the door, was right there. He could have just as easily been taken outside and I think I give a lot of leeway to protective searches or searches for officer safety but I just don't think you have to walk across the room and look in ashtrays and look down by chairs when you are doing a protective sweep, looking for somebody who might threaten your safety ... I think the protective sweep or the search for the officer's safety was far too extensive. So, the issue becomes whether the small amount of marijuana found on the Defendant and the money was sufficient probable cause to go ahead and sustain the affida-

vit for probable cause seeking the search warrant. Under the circumstances of this case, I am going to find it was not.

(R. at 363.)[6] The trial court then suppressed all evidence found in Estep's residence except for the money and marijuana found on his person.

### 1. *Suppression of Evidence Obtained Inside the Residence*

█ In summary, the State argues that the trial court's ruling on the Motion to Suppress was contrary to law. It urges that the officers properly entered Estep's house to make the arrest and that the officers saw in plain view the evidence upon which the search warrant was based after their entry into the residence. Conversely, Estep argues that the officers did not lawfully enter his home and that therefore the "plain view" exception to the requirement of a search warrant does not apply in this case. Alternatively, he argues that even if the officers did have a right to enter his home to arrest him, the officers exceeded their limited right to enter and search for persons under the "protective sweep" doctrine, and therefore the evidence was properly suppressed.

Estep contends that the officers should have pulled him outside the front door and closed the door behind him without conducting a protective sweep of the residence prior to arresting him. Sergeant Brad Shoemaker testified that the officers could have arrested Estep outside his residence:

Q: Okay. So he opened the door, you've got you and another officer on the porch, and you have other officers around, so you could have had him come up on, come out on the porch, handcuffed him, and taken him away.

6. The trial court expressed intent to enter written findings, but no such findings were ever entered. (R. at 363.) Thus, the general judgment standard is controlling, and this court will uphold the trial court's ruling under any theory the evidence supports.

A.  We could have done that?  I suppose we could have done that, yes.

(R. at 154.)  The State argues the officers properly entered Estep's residence to make the arrest, citing *Maryland v. Buie*, 494 U.S. 325, 330, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990): "If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law."

■  Clearly, law enforcement officers have a right to enter a suspect's home with an arrest warrant *if he is attempting to hide* from law enforcement in his home: "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).  Additionally, Ind.Code § 35–33–2–3(b) provides that "[a] law enforcement officer may break open any outer or inner door or window in order to execute an arrest warrant, *if he is not admitted* following an announcement of his authority and purpose."  (Emphasis added.)  We find that the existence of a valid arrest warrant for Estep combined with the holdings in *Buie* and *Payton* provide sufficient justification for the officers' entry to arrest Estep.  However, we are not satisfied that the officers' actions after entry were equally justified, when they not only entered but remained after completing the arrest, and thus placed themselves in a position to conduct a protective sweep and see the items of contraband they seized.

■  Our supreme court has previously recited the circumstances under which a protective sweep may take place:

[A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched.  Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene ...  We should emphasize that such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found.  The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

*Smith v. State*, 565 N.E.2d 1059, 1061–62 (Ind.1991) (overruled on other grounds by *Albaugh v. State*, 721 N.E.2d 1233, 1235 (Ind.1999)), quoting *Buie*, 494 U.S. at 334–35, 110 S.Ct. 1093.  Thus, a protective sweep is authorized under *Buie* either of rooms immediately adjoining the place of the arrest (without need for officer suspicion), or of areas that might, given facts articulable by the searching officer, contain a hiding person who might jeopardize officers safety.  These two prongs of the *Buie* holding are considered in reverse order in the following paragraphs.

The State does not make an argument under either prong of *Buie* other than to cite the case generally as authority for the proposition that police could enter Estep's residence.  Nor does the State address the scope of the protective sweep.  Instead, the State simply argues that once officers

were properly inside the residence, they could seize contraband under the plain view doctrine.

Estep argues generally under *Buie* that the police did not cite articulable facts justifying a sweep. Although Estep does not explicitly phrase it as such, this statement could be viewed as an argument under the second prong of *Buie*. To illustrate the lack of articulable facts regarding the need for a protective sweep of the entire home, Estep quotes Sergeant Shoemaker's testimony regarding the search of the home: "Well, because when we search a house with a known felon in the house that we have a warrant for, ideally they run with other felons, and they conceal weapons as well as narcotics and could be a threat or danger to the officers within the residence." (Br. of Appellee at 10, citing R. at 157.)

Our supreme court has previously considered what qualifies as specific, articulable facts justifying a sweep under the second prong of *Buie*. In *Smith*, the supreme court ruled that officers' search of a locked storage room (and subsequent seizure of marijuana found in the storage room) was not justified under either prong of *Buie*. Officers came into the Smith residence with an arrest warrant for Tammy Smith but no search warrant for the home. An officer testified at trial regarding the entry into the locked storage room:

Q. So when you were confronted with a room that you couldn't ... open ... a locked door ... why was it necessary to secure the house? Why didn't you simply leave there with Tammy Smith?

A. If we had done that ... and at a later time found that there was possibly a fleeing felon or someone injured or who knows what was in that room that could have been taken care of ... I've seen circumstances like that kind of sneak up on you.

Q. But you actually had no information or facts to support that kind of concern?

A. Just past experience ...

Q. There was nothing that required you to open the door to that room, was there?

A. Only past experience.

Q. And suspicion?

A. There is always suspicion.

*Smith*, 565 N.E.2d at 1062. The court went on to state that the officer's "given reasons do not constitute 'specific and articulable facts,' but are instead the mere 'inchoate and unparticularized suspicion or hunch' which were proscribed as insufficient justification for a warrantless search under *Terry v. Ohio* (1968), 392 U.S. 1, 27 [88 S.Ct. 1868, 20 L.Ed.2d 889] ..." *Id.* at 1063.

Similarly, in *United States v. Brown*, 69 F.Supp.2d 925 (E.D.Mich.1999), the court considered whether a search labeled as a protective sweep exceeded its permissible scope under the Fourth Amendment. An ATF agent testified that while other agents in the suspect's home were arresting the suspect, he conducted a search: "As soon as I execute a[n arrest] warrant, it's proper procedure you immediately come in and conduct a security sweep." The court found the ATF's standard procedure to be constitutionally impermissible:

This testimony reveals that the ATF agents did not form a specific belief that Defendant's residence harbored a dangerous individual, but instead conducted a protective sweep of both the downstairs and upstairs as a matter of course ... To the extent this sweep covered areas beyond the immediate vicinity of the arrest, it exceeded the scope of a permissible sweep as defined in *Buie*.

*Brown*, 69 F.Supp.2d at 930.

█ The officers did not have articulable suspicion justifying a protective sweep

of Estep's entire residence. Sergeant Shoemaker testified they asked Estep whether anyone else was in the residence, and Estep replied there was not. (R. at 156.)[7] No additional testimony was offered regarding why anyone else might be in the residence except for officers' statements that a sweep is departmental policy and that felons "ideally ... run with other felons." (Br. of Appellee at 10, citing R. at 157.) Sergeant Shoemaker testified that a search of the house for persons who might endanger officers is standard operating procedure for every felony arrest warrant executed inside a house, in other words, that such searches occur "as a matter of course." *See id.* (R. at 169.)[8] Sergeant Shoemaker's statement in the instant case is the same "inchoate and unparticularized suspicion" proscribed in *Terry* and in *Smith.*

Neither Estep nor the State makes any argument under the first prong of *Buie* regarding whether the rooms searched immediately adjoined the place of the arrest; nor did the trial court elicit any such testimony or make any such findings. Although there are inferences that may be made about the home's layout from various statements in the record, it is not appropriate for this court to weigh the evidence on this issue for the first time on appeal. Instead, we are bound to apply the general judgment standard to the issue of whether the rooms searched immediately adjoined the place of arrest.

The trial court may well have determined that all the rooms in which contraband was found did immediately adjoin the place of arrest but that the protective sweep was far too extensive in general because it exceeded the spirit of the limited grant to search described in *Buie:*

> We should emphasize that such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger *and in any event no longer than it takes to complete the arrest and depart the premises.*

*Buie,* 494 U.S. at 334–35, 110 S.Ct. 1093 (1990) (emphasis added).

Several factors, when considered cumulatively, support this theory. Sergeant Milender testified that he searched the entire main floor of the house, including the kitchen, bathroom, spa room, bedroom, spare room, and closets. He testified that another officer at the scene opened the door to the basement and searched the basement, as well. Milender also testified that it took approximately an hour to arrest Estep, take him into custody, and wait for the narcotics officers to arrive at the scene. Detective Gregory West testified the officers simply waited in Estep's living room for approximately forty-five minutes while Detective Janet Romeril went downtown to get the search warrant signed. Detective Romeril got the call to come to Estep's residence at approximately 10:40 a.m., but the warrant was not executed until 1:40 p.m. These factors combined would support the trial court's statement that: "I think the protective sweep or the search for the officer's safety was far too extensive." Here, the arrest occurred at the front door, and the evidence supports

---

7. Estep testified that no officer ever asked him if anyone else was home. (R. at 264.)

8. We note here our serious concern about a standard police procedure which instructs that officers shall conduct in similar circumstances a broad sweep for persons.

the conclusion that the sweep took much longer than it would have taken to complete the arrest and depart the premises. *See Buie* at 335, 110 S.Ct. 1093. Based on the foregoing, we agree with the trial court.

### 2. *Issuance of the Search Warrant*

The State also contends that the trial court applied the wrong legal standard when it determined that probable cause did not support the issuance of a search warrant. The State argues that instead, the trial court should have determined whether a substantial basis supported the issuing judge's decision to issue the warrant. However, the correctness of the judge's review of the issuance of the search warrant is immaterial, as the arresting officers violated Estep's rights in order to find the items that led them to obtain the search warrant. Even if we were to accept the State's implication that the magistrate did have probable cause to issue the search warrant based upon the evidence before him, we would still find that evidence was properly suppressed because the officers impermissibly conducted an overly broad protective sweep prior to obtaining the warrant.

Affirmed.

SHARPNACK, C.J., and NAJAM, J., concur.