**STATE of Indiana, Appellant–Plaintiff,**

**v.**

**Robert RICHARDSON, Appellee–Defendant.**

No. 49A02–0807–CR–583.

Court of Appeals of Indiana.

May 22, 2009.

Rehearing Denied July 27, 2009.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General Indianapolis, IN, Attorneys for Appellant.

David R. Hennessy, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Robert Richardson ("Richardson") filed a motion to suppress evidence seized after he was initially stopped for a seatbelt violation. The Marion Superior Court granted Richardson's motion. The State of Indiana appeals and argues that the trial court erred in granting Richardson's motion. We reverse.

### Facts and Procedural History

On July 10, 2007, Indianapolis Metropolitan Police Officer Tanya Eastwood ("Officer Eastwood") was working on a "stat driven" overtime shift. This meant that the purpose of the shift was to write tickets and make arrests. If Officer Eastwood did not write enough tickets or make enough arrests, she would not get to work the overtime shift. Officer Eastwood drove past a pickup truck stopped at a stop sign and noticed that the driver, Richardson, was not wearing a seat belt.[1] Officer Eastwood recognized Richardson from a prior traffic stop, during which she had encountered no problems with Richardson. And when Officer Eastwood stopped Richardson in the incident at issue before us, Richardson was immediately cooperative with Officer Eastwood and admitted that he did not have his seat belt on.

Officer Eastwood asked the passenger in Richardson's truck for his identification. The passenger did not have an identification card with him, so Officer Eastwood took his information verbally. While she was doing this, she noticed "a very large, unusual bulge" in Richardson's pocket. Officer Eastwood asked Richardson what was in his pocket, and he told her that it was his handgun. Officer Eastwood told Richardson not to put his hand in his pocket and asked for his handgun permit. She also asked him to exit the vehicle so that she could take his gun during the traffic stop. Richardson gave his handgun permit to Officer Eastwood. The permit had been in Richardson's wallet and was wrinkled. The issue date of the permit was "06/12/2006," but the last digit of the year of the expiration date was illegible. Ex. Vol., State's Ex. 1, 2.

Officer Eastwood radioed headquarters, who found no problems with Richardson's driver's license or vehicle registration. Nevertheless, Officer Eastwood's personal routine was to perform a criminal background check on anyone with a handgun, even if they presented a permit. Therefore, she asked headquarters to check Richardson's criminal history and also called for the assistance of a narcotics canine. Although Officer Eastwood admitted that there was nothing specific about

---

1. The seat belt enforcement statute was amended effective July 1, 2007, just nine days prior to the present incident, to require occupants of all motor vehicles, including pickup trucks, to wear safety belts. *See* Ind.Code § 9–19–10–2 (Supp.2008) (as amended by P.L. 214–2007 § 7).

Richardson's handgun permit that made her suspect that it was counterfeit, she generally felt that all handgun permits could be easily forged. Despite these reservations, expressed later in discovery, Officer Eastwood did not check with headquarters as to the validity of Richardson's handgun permit.

Headquarters informed Officer Eastwood that Richardson had a "prior conviction for possession of cocaine and public intox." Tr. p. 22. Richardson overheard this and told Officer Eastwood that his prior conviction was a misdemeanor, not a felony. Officer Eastwood therefore asked headquarters if Richardson's prior conviction was a felony or a misdemeanor. Headquarters replied, "that does not say." *Id.* Officer Eastwood asked again, and headquarters responded, "Looks like that possession of cocaine is going to be a felony conviction." *Id.* Officer Eastwood then asked another source at headquarters, "can you check [Richardson's] possession of cocaine conviction and make sure it's a felony and not alternate misdemeanor sentencing." Ex. Vol., Defendant's Ex. A, p. 2. Officer Eastwood was then told:

> it shows up that it is a felony D possession of cocaine and the strange thing is I looked under sentencing and I know he got probation, it doesn't tell me what probation he got. [B]ut it shows him only serving 20 days so I don't know how accurate that is.

*Id.* Officer Eastwood did not use her laptop computer in her patrol car to check Richardson's criminal history. Richardson's criminal history indicated that his prior possession conviction had a "GL" notation, which apparently stands for "guilty lesser." Defendant's Ex. C.

Officer Eastwood then placed Richardson under arrest for "having a firearm with a prior felony conviction within the last fifteen years." Tr. p. 33. Another police officer who had arrived to assist Officer Eastwood then started to pat down Richardson and felt a large object in Richardson's underwear. Richardson then began to struggle with the officers and attempted to flee. The officers forced Richardson down onto an embankment where he continued to resist and attempted to place his hands in his pants. During the struggle, Richardson kicked Officer Eastwood in the chest, and she attempted to use a taser on him. Although this proved ineffective, the officers were eventually able to subdue Richardson. The object in Richardson's underwear was later determined to be cocaine.

On July 11, 2007, the State charged Richardson with Class A felony dealing in cocaine, Class C felony possession of cocaine, Class C felony possession of cocaine and a firearm, Class A misdemeanor resisting law enforcement, and Class A misdemeanor battery on a law enforcement officer. Richardson filed a motion to suppress the evidence, and the trial court held a hearing on this motion on January 25, 2008. Both parties subsequently submitted briefs on the suppression issue, and on April 25, 2008, the trial court granted Richardson's motion to suppress. The State then filed a motion to correct error on May 27, 2008, which the trial court denied the following day. The State now appeals.[2]

## Standard of Review

On appeal from the trial court's grant of a motion to suppress, the State appeals from a negative judgment and must show that the trial court's ruling on

---

**2.** *See* Ind.Code § 35–38–4–2(5) (2004) (permitting the State to appeal from an order granting a motion to suppress evidence if the ultimate effect of the order is to preclude further prosecution).

the suppression motion was contrary to law. *State v. Estep,* 753 N.E.2d 22, 24–25 (Ind.Ct.App.2001). We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that reached by the trial court. *Id.* at 25. We consider only the evidence favorable to the trial court's decision and will neither reweigh the evidence nor judges the credibility of witnesses. *Id.*

### Discussion and Decision

■ On appeal, the State argues that the trial court erred in granting Richardson's motion to suppress because it claims that Richardson was properly searched incident to his lawful arrest for both carrying a handgun and resisting law enforcement. In addressing this argument, we note that Richardson does not deny that the initial stop was valid. Officer Eastwood observed Richardson driving in his truck without a seatbelt and properly stopped him for this violation. An officer may initiate a traffic stop based upon reasonable suspicion that the occupants in a vehicle are not wearing seatbelts as required by law. *Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind.1999) (interpreting Ind.Code § 9–19–10–3).[3]

Traffic stops based upon a seatbelt violation are limited by the very statute that authorizes them. Pursuant the Seatbelt Enforcement Act, "a vehicle may be stopped to determine compliance with [the seat belt] chapter." I.C. § 9–19–10–3.1. The next sentence of this section limits police authority in such situations: "However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle, may not be inspected, searched, or detained solely because of a violation of this chapter." *Id.*

In *Baldwin,* our supreme court upheld the Seatbelt Enforcement Act against a constitutional attack, narrowly construing the Act to require that "when a stop to determine seat belt law compliance is made, the police are strictly prohibited from determining anything else, even if other law would permit." 715 N.E.2d at 339. We have since cautioned that a traffic stop based upon the failure of either the driver or passenger to wear a seatbelt does not, standing alone, provide reasonable suspicion for the police to unilaterally expand their investigation and "fish" for evidence of other possible crimes. *See State v. Morris,* 732 N.E.2d 224, 228 (Ind. Ct.App.2000).

■ However, we have also clarified that the Seatbelt Enforcement Act should not be read to prohibit police from performing a limited pat-down search for weapons for officer safety when such is the result of actions or behavior on the part of the defendant after the initial stop which would lead the officer to fear for his safety. *Trigg v. State,* 725 N.E.2d 446, 448 (Ind. Ct.App.2000). In such cases, a limited pat-down search for weapons is not a search *solely* because of a violation of the seatbelt law. *Id.* The key to this rule, however, is that the circumstances justifying the limited pat-down weapons search must be over and above the seatbelt violation itself. *Id.* at 448–49; *see also Morris,* 732 N.E.2d at 228.

■ Thus, where circumstances above and beyond the seatbelt violation arise after the initial stop, further police actions may be justified. *See Pearson v. State,* 870 N.E.2d 1061, 1066 (Ind.Ct.App.2007) (officer's knowledge that defendant had previously been reported as violent or possibly armed was sufficient to justify the minimal intrusion imposed by a limited

---

3. This provision is now found in Indiana

Code section 9–19–10–3.1 (Supp.2008).

pat-down search for weapons), *trans. denied; Morris*, 732 N.E.2d at 228 (where defendant failed to produce his driver's license and officer confirmed that defendant's license was suspended, officer acted reasonably in requesting defendant to exit his vehicle, at which time he detected odor of alcohol, which gave rise to reasonable suspicion that defendant was driving while intoxicated); *Trigg*, 725 N.E.2d at 449 (fact that defendant became nervous and "fidgeted in his seat as if trying to hide or retrieve something" when police officer approached vehicle justified pat-down search for weapons).

Where no circumstances arise after the initial seatbelt stop which would justify further police investigation, we have held that the Seatbelt Enforcement Act was violated. *See Pearson*, 870 N.E.2d at 1068 (although limited pat-down search of defendant was justified by officer's reasonable concerns for his safety, contraband was discovered as a result of officer's questions, not as a result of the search, and without circumstances arising after the stop which independently provided the officer with reasonable suspicion of other crimes, officer's questioning was not permitted under Seatbelt Enforcement Act); *Clark v. State*, 804 N.E.2d 196, 201 (Ind. Ct.App.2004) (reversing denial of defendant's motion to suppress where, aside from the seatbelt violation, there were no facts known to the officer that would have reasonably led him to believe that criminal

activity had occurred or was about to occur at the time that he asked for consent to search the defendant's car).[4]

In the present case, we have an admittedly valid initial stop for a violation of the Seatbelt Enforcement Act. Officer Eastwood did not exceed the permitted statutory limits of a seatbelt stop by asking Richardson for his license or registration.[5] *See Morris*, 732 N.E.2d at 228 (officer was justified in asking defendant for his license because such was reasonably necessary to issue a warning or citation for failure to wear a seatbelt).

 While talking to the passenger, Officer Eastwood noticed a very large, unusual bulge in Richardson's pants pocket and asked him what the object was. The State claims Officer Richardson's inquiry was entirely proper, noting that mere police questioning does not constitute a seizure for Fourth Amendment purposes. *See Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005). Nor is it unreasonable under Article 1, Section 11 of the Indiana Constitution for an officer to ask a motorist whether he or she has contraband on his person. *See State v. Washington*, 898 N.E.2d 1200, 1207–08 (Ind.2008). Here, however, we are faced with a stop under the Seatbelt Enforcement Act, which places further restrictions on police activity that would otherwise be permissible.

4. In *State v. Washington*, 898 N.E.2d 1200, 1207 (Ind.2008), our supreme court wrote, "the result in *Clark* is consistent with the Seatbelt Enforcement Act's express restriction that 'a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter.'" However, "[t]o the extent that *Clark* holds that [Article 1,] Section 11 or our decision in *Baldwin* generally prohibit police from questioning motorists or seeking consent to search following a terminated traffic stop, it is incorrect." *Id.*

5. Less clear is Officer Eastwood's act of asking Richardson's passenger for his or her identification. Officer Eastwood never explained why she requested anything from the passenger, nor does the State explain why this questioning was authorized under the Seatbelt Enforcement Act. But Richardson does not explain why the questioning of the passenger was impermissible.

That having been said, the Seatbelt Enforcement Act does not prohibit police from performing limited pat-down searches for weapons for officer safety when such is based upon circumstances over and above the seatbelt stop itself. *Trigg,* 725 N.E.2d at 448–49; *see also Morris,* 732 N.E.2d at 228. Here, the officer asked a simple question; she did not conduct the comparatively greater intrusion of a pat-down search. Whether or not the presence of an large, unusual object in a motorist's pocket would justify a limited patdown search, we do not think it impermissible under the Seatbelt Enforcement Act for an officer to ·simply ask a motorist what such an object is. Officer Eastwood's question was based on the presence of the large, unusual object, which was a circumstance above and beyond the seatbelt stop itself. As such, this questioning was not based solely on a seatbelt violation. *See Trigg,* 725 N.E.2d at 448. This is different than what happened in *Clark,* where we held that the officer was prohibited from asking for consent to search the vehicle of a motorist who had been stopped for a seatbelt violation. In *Clark,* there were no facts above and beyond the seatbelt violation itself which justified the officer's request for consent. 804 N.E.2d at 201. Here, after the initial seatbelt stop, Officer Eastwood noticed a very large, unusual object .in Richardson's pocket. We do not think it unreasonable for her to have merely asked Richardson what this object was. We therefore conclude that Officer Eastwood's inquiry regarding the large, unusual object in Richardson's pocket did not exceed the scope of

police behavior permitted under the Seatbelt Enforcement Act, Article 1, Section 11, or the Fourth Amendment.

■ But this does not end our discussion. We must next address the propriety of Richardson's arrest for carrying a handgun. When Richardson admitted that he had a handgun in his pocket, he also produced a "tattered" handgun permit. Richardson notes that, even though the expiration date on the permit was not legible, the permit had been issued on "06/12/2006," just over a year before the stop. In Indiana, handgun permits are, as acknowledged by Officer Eastwood, issued for four years or for life. *See* Ind.Code § 35–47–2–4(a) (2004). Obviously, a permit issued in 2006 had not expired in 2007. Richardson complains that Officer Eastwood did not check to see if his handgun license was valid. However, she did check with headquarters three separate times to see if Richardson had a criminal record. As explained below, a criminal record can impact the validity of a handgun permit.

Indiana Code section 35–47–2–1 (2004) provides in relevant part:

> Except as provided in subsection (b) [6] and section 2 [7] of this chapter, a person shall not carry a handgun in any vehicle .or on or about the person's body, except in the person's dwelling, on the person's property or fixed place of business, without a license issued under this chapter being in the person's possession.

A person who violates Indiana Code section 35–47–2–1 commits a Class A misdemeanor. Ind.Code § 35–47–2–23(c) (2004).

---

**6.** Subsection (b) of section 1 states that a person who has been convicted of domestic battery "may not possess or carry a handgun in any vehicle or on or about the person's body in the person's dwelling or on the person's property or fixed place of business," unless the person's right to possess a firearm

has been restored under Indiana Code section 35–47–4–7 (Supp 2008).

**7.** Indiana Code section 35–47–2–2 (2004) lists various persons, such as law enforcement officers and judicial officers, to whom Indiana Code section 35–47–2–1 does not apply.

This offense is elevated to a Class C felony "if the person ... has been convicted of a felony within fifteen (15) years before the date of the offense." I.C. § 35–47–2–23(c)(2)(B).

Officer Eastwood testified that she arrested Richardson for "having a firearm with a prior felony conviction within the last fifteen years."[8] Tr. p. 33. As Richardson notes, this is not an independent criminal offense. Instead, it is a Class A misdemeanor to carry a handgun without a license; it is a Class C felony to carry a handgun without a license *and* have a felony conviction within the past fifteen years.

However, pursuant to statute, a license to carry a handgun "shall not be issued to any person who ... has been convicted of a felony[.]" Ind.Code § 35–47–2–3(g)(*l*) (2004). Therefore, if Richardson had *ever* been convicted of a felony, he should not have been issued a handgun permit, and his possession of a handgun would have been criminal. Officer Eastwood was informed by headquarters that Richardson had a prior felony conviction. When Richardson contested the accuracy of this information, Officer Eastwood checked two more times and was still told that Richardson indeed had a prior felony conviction. At this point, Officer Eastwood had good reason to suspect the validity of Richardson's handgun license and therefore had probable cause to arrest him for carrying a handgun without a *valid* license.[9]

■ We acknowledge that the information Officer Eastwood received from headquarters was, in fact, incorrect. At the hearing on the motion to suppress, the State admitted that Richardson did not, in fact, have a prior felony conviction. Tr. p. 25. Thus, Officer Eastwood's arrest of Richardson was ultimately improper. The question then becomes, should the evidence found as a result of this arrest, which was later determined to be improper, be suppressed under the exclusionary rule?

A similar question was before the United States Supreme Court in the recent case of *Herring v. United States*, —— U.S. ——, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). In *Herring*, a police officer learned that the defendant had driven to the sheriff's department to retrieve something from his impounded truck. Because Herring was "no stranger to law enforcement," the officer asked the county's warrant clerk to check for any outstanding warrants for Herring's arrest. *Id.* at 698. When this check revealed no local warrants, the officer asked the clerk to check with her counterpart in a neighboring county to see if they had any warrants for Herring's arrest. The clerk in the neighboring county stated that there was an outstanding warrant for Herring's arrest for failure to appear. The local clerk told the officer about the outstanding warrant and asked the clerk in the neighboring county to fax her a copy of the warrant. When the officer learned about the warrant, he arrested Herring and, during a search incident to his arrest, found methamphetamine in his pocket and a pistol, which as a felon Herring was not allowed

---

8. Officer Eastwood clarified upon cross-examination that she thought Richardson was guilty of "[c]arrying a handgun *with no license* with a prior felony conviction within fifteen years." Tr. p. 78 (emphasis added). This is consistent with Officer Richardson's testimony that she questioned the validity of Richardson's tattered handgun permit.

9. We further note that "the burden of proof is on the defendant to prove that he is exempt under section 2 of [the handgun] chapter, or that he has a license as required under this chapter." Ind.Code § 35–47–2–24 (2004).

to possess, in his vehicle.[10] It was later discovered, however, that the neighboring county had made a mistake about the warrant; the warrant had been recalled, but this information had not been entered into the computer database the warrant clerk had checked. By the time this information was relayed to the officer, he had already arrested Herring and discovered the drugs and pistol.

Herring was charged with illegal possession of both the drugs and the gun, and moved to suppress the evidence on grounds that the arrest leading to the discovery of these items was invalid. The District Court denied Herring's motion and was affirmed on appeal. The Supreme Court granted Herring's petition for certiorari and held that the fact that a Fourth Amendment violation occurred does not necessarily mean that the exclusionary rule applies. *Id.* at 700. The Court noted that the exclusionary rule is not an individual right and applies only where it will result in "appreciable deterrence." *Id.* (quoting *United States v. Leon,* 468 U.S. 897, 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). After discussing the good faith exception and its evolution, the court wrote:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent

conduct, or in some circumstances recurring or systemic negligence.

*Id.* at 702 (footnote omitted).

Applying this to the case before it, the Court concluded that the conduct at issue, i.e. the mistake about the warrant, "was not so objectively culpable as to require exclusion." *Id.* at 703. If it had been established that the police were reckless in maintaining the warrant system, or had knowingly made false entries to justify false arrests, "exclusion would certainly be justified." *Id.* Rejecting the claim that mere negligence by the police was sufficient to justify exclusion, the Court ultimately concluded, "when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.' In such a case, the criminal should not 'go free because the constable has blundered.'" *Id.* at 704 (Citations omitted).

Both this court and the Indiana Supreme Court have applied the good faith exception to the exclusionary rule when dealing with Article 1, Section 11 of the Indiana Constitution. *See, e.g., Wendt v. State,* 876 N.E.2d 788, 790 (Ind.Ct.App. 2007), *trans. denied* (citing *Hopkins v. State,* 582 N.E.2d 345, 351 (Ind.1991); *Mers v. State,* 482 N.E.2d 778, 783 (Ind.Ct. App.1985)).[11] We therefore believe that application of the rule stated in *Herring* is proper in the case before us.

Here, as in *Herring,* a police officer was given information which led to the arrest of the defendant. In both cases, this infor-

---

**10.** We note that the ability of the police to search a vehicle incident to the arrest of an occupant was recently curtailed. *See Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of

the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.").

**11.** There is also an Indiana statute codifying the good faith exception. *See* Ind.Code § 35–37–4–5 (2004).

mation was later discovered to have been incorrect, and the arrest of the defendant was therefore improper. But, as in *Herring,* this is not enough, by itself, to justify suppression of evidence discovered as a result of the arrest. The mistake here, like in *Herring,* appears to have been a "police mistake" which was "the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements[.]" 129 S.Ct. at 704. Without any indication that the police were reckless in maintaining their records or knowingly made false entries in order to justify false arrests, exclusion is not justified. *See id.* We therefore reverse the trial court's conclusion that the evidence seized as a result of Richardson's arrest was subject to suppression.[12]

Reversed.

BAILEY, J., and BARNES, J., concur.

---

**12.** The State argues that Richardson's act of fleeing and resisting law enforcement constitute intervening acts which purged any taint from the improper arrest. *See Cole v. State,* 878 N.E.2d 882, 888–89 (Ind.Ct.App.2007) (concluding that defendant's act of resisting law enforcement subsequent to an improper traffic stop "completely purged the taint from the unconstitutional investigatory stop."). We need not address this specific argument because we have already concluded that the exclusionary rule does not apply under the facts and circumstances of this case.