## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 14 2017, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

R. Patrick Magrath
Alcorn Sage Schwartz &
Magrath, LLP
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Benjamin Bracewell,

*Appellee-Defendant.*

August 14, 2017

Court of Appeals Case No.
36A05-1702-CR-356

Appeal from the Jackson Circuit Court

The Honorable William E. Vance, Senior Judge

Trial Court Cause No.
36C01-1607-F2-18

**Robb, Judge.**

# Case Summary and Issues

[1]     In July 2016, Benjamin Bracewell was arrested and the State charged him with dealing in methamphetamine, a Level 2 felony; unlawful possession of a firearm by a serious violent felon, a Level 4 felony; carrying a handgun without a license, a Level 5 felony; and possession of marijuana, a Class B misdemeanor. Prior to trial, Bracewell filed motions to suppress the cash, key cards, marijuana, handgun, methamphetamine, and scales found during his encounter with police as well as statements he made to police. The trial court granted Bracewell's motions. The State raises three issues for our review, which we consolidate and restate as: whether the trial court erred in suppressing the evidence. Concluding the trial court properly suppressed the cash, key cards, marijuana, and Bracewell's statements but erred in suppressing the handgun, methamphetamine, and scales, we affirm in part, reverse in part, and remand for further proceedings.

# Facts and Procedural History

[2]     On the evening of July 9, 2016, Officer James Handley of the Seymour Police Department parked his unmarked patrol car in the parking lot of a Seymour hotel. The Seymour Police Department considered the area a "high crime area." Transcript, Volume II at 11. Ten minutes later, Bracewell walked from the hotel towards Officer Handley's vehicle. Bracewell walked to within a couple car lengths of Officer Handley's vehicle before turning around and

walking back toward the hotel. Officer Handley then exited his vehicle and followed Bracewell.

[3] Officer Handley caught up with Bracewell near the top of the two-story hotel's exterior stairwell. Officer Handley asked Bracewell why he turned and walked away from the police vehicle. Bracewell replied he thought the car belonged to a friend who was supposed to give him a ride and he turned around after realizing his mistake. Officer Handley spoke into his police radio, informing dispatch he was with Bracewell. Bracewell reacted by raising both hands into the air, showing he had nothing in them. Officer Handley continued speaking to Bracewell for more than five minutes. Officer Handley asked Bracewell whether he had "something on you you shouldn't have," accused him of "moving stuff," and told him "you're gonna get caught." State's Exhibit 1, Clip 1 at 1:05-1:15, 4:40-5:00.

[4] Six minutes after Officer Handley began conversing with Bracewell, Officer Devlin McMindes of the Seymour Police Department arrived. Officer Handley again asked Bracewell if he had anything illegal on his person and Bracewell responded he did not. Bracewell then consented to a pat-down search. Officer Handley conducted a pat-down search and found nothing illegal.

[5] Officer Handley then turned to walk downstairs to retrace and search Bracewell's route, telling Bracewell, "I'm gonna have [Officer McMindes] stand with you and I'm gonna walk your route real quick, okay?" *Id.* at 7:00-7:10. As Officer Handley began retracing Bracewell's route, a third officer, Officer

Benjamin Miller of the Seymour Police Department, arrived and also stood with Bracewell. When Officer Handley reached the bottom of the stairwell, Bracewell dropped his driver's license from the top of the stairwell. Officer Handley retrieved the card from the ground and noticed what he believed was a marijuana cigarette a few inches from the card. Officer Handley instructed Officer McMindes to place Bracewell in custody. Officer McMindes placed Bracewell in handcuffs, read him his *Miranda* warnings, and searched him. Officer McMindes found cash and two key cards in Bracewell's pocket.[1]

[6] Officer Handley continued retracing Bracewell's route before eventually searching more around the stairwell. Officer Handley first found a red bag lying on the ground on the opposite side of the stairwell from where he and Bracewell stood and talked. Officer Handley opened the bag, discovered a gun, and brought it to Bracewell. Bracewell denied possessing the bag or gun. Officer Handley searched the stairwell again and found a black case sitting on a small ledge near where he found the red bag. He opened the black case and found methamphetamine and scales. Bracewell denied possessing the case or its contents.

[7] Officer McMindes transported Bracewell to the police station. Officer McMindes later testified Bracewell admitted during his transport he dropped the marijuana cigarette. The next day, while Bracewell was still in custody,

---

[1] The key cards led officers to a nearby hotel where they found $4,000 in cash in a room Bracewell was staying in.

Officer Handley read him his *Miranda* warnings again and questioned him. Bracewell told Officer Handley that he had him "dead in rights." Tr., Vol. II at 36.

[8] The State charged Bracewell with dealing in methamphetamine, a Level 2 felony; unlawful possession of a firearm by a serious violent felon, a Level 4 felony; carrying a handgun without a license, a Level 5 felony; and possession of marijuana, a Class B misdemeanor.

[9] On August 17, 2016, Bracewell filed a motion to suppress. Bracewell alleged his detainment was unlawful under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. As a result, he argued physical evidence discovered during his unlawful detainment should be suppressed. On December 12, 2016, Bracewell filed another motion to suppress, seeking to suppress some of his statements. After hearing evidence and receiving briefing from both parties, the trial court granted Bracewell's motions. This appeal followed.

# Discussion and Decision

## I. Standard of Review

[10] On appeal from the grant of a motion to suppress, the State appeals from a negative judgment and must show the trial court's ruling on the suppression motion was contrary to law. *State v. Estep*, 753 N.E.2d 22, 24-25 (Ind. Ct. App. 2001). This court neither reweighs the evidence nor judges the credibility of the

witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.* at 25. This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.*

## II. Items in Stairwell

### A. Marijuana Cigarette

[11] The State argues the trial court erred in suppressing the marijuana cigarette Officer Handley found near Bracewell's driver's license. Specifically, the State contends Bracewell abandoned the marijuana cigarette while walking away from Officer Handley, before any seizure of Bracewell occurred. As a result, the State alleges no Fourth Amendment violation arose from its collection. Alternatively, the State contends Bracewell abandoned the marijuana cigarette during his encounter with Officer Handley at the top of the stairs, which constituted either a consensual encounter or a valid *Terry* stop. Either way, the State argues no Fourth Amendment violation occurred. We disagree.

[12] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment requires that an arrest or detention for more than a short period be justified by probable cause. *Woods v. State*, 547 N.E.2d 772, 778 (Ind. 1989), *abrogated on other grounds by Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). Probable cause to arrest exists where the facts and circumstances within the knowledge of the officers are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested has committed it. *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949).

[13] Not every confrontation between a police officer and a citizen amounts to a Fourth Amendment seizure of a citizen. *Hayes v. State*, 794 N.E.2d 492, 496 (Ind. Ct. App. 2003), *trans. denied*. A seizure occurs when, taking into account all the circumstances surrounding an encounter, the police conduct would communicate to a reasonable person that he was not free to ignore the police presence and go about his business. *Id.* Police actions that a reasonable person might interpret as an intrusion on freedom of movement include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen, or use of language or tone of voice indicating that compliance with the officer's request might be compelled. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

[14] Even if police actions exhibit an intrusion on freedom of movement, a seizure does not occur until the person submits to the show of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Further, abandoned property is not subject to Fourth Amendment protection. *Campbell v. State*, 841 N.E.2d 624, 627 (Ind.

Ct. App. 2006). However, if property is abandoned after a citizen is improperly detained, the evidence is not admissible. *Id.* The question of abandonment is primarily a question of intent and rests upon whether the defendant retained a reasonable expectation of privacy in the property at the time of the search or seizure. *State v. Machlah*, 505 N.E.2d 873, 879 (Ind. Ct. App. 1987) *trans. denied*.

[15] In addition to seizures, another form of confrontation between officers and citizens with Fourth Amendment implications is a *Terry* stop. A *Terry* stop occurs when an officer, without a warrant or probable cause, briefly detains an individual for investigatory purposes. *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000), *trans. denied*. The officer must have reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot. *Id.* "[R]easonable suspicion must be comprised of more than hunches or unparticularized suspicions." *State v. Murray*, 837 N.E.2d 223, 225-26 (Ind. Ct. App. 2005), *trans. denied*. In contrast to seizures and *Terry* stops, consensual encounters have no Fourth Amendment implications. *Overstreet*, 724 N.E.2d at 663. During consensual encounters, officers make a casual and brief inquiry of a citizen who is free to leave at any time. *Id.*

[16] Officer Handley's interaction with Bracewell was not a consensual encounter. Officer Handley quickly followed Bracewell after Bracewell turned and walked away from Officer Handley's vehicle. Officer Handley caught up to Bracewell at the top of the stairwell and began questioning Bracewell and accusing him of illegal activity. Bracewell raised both hands to show his empty palms when he

heard Officer Handley state his name while speaking to dispatch and Officer Handley physically patted-down Bracewell. After Officer McMindes arrived, also in full uniform, Officer Handley told Bracewell that Officer McMindes would stand with him while Officer Handley retraced Bracewell's route. As Officer Handley began retracing Bracewell's route, Officer Miller, also in full uniform, arrived at the scene and stood with Bracewell. By this point the interaction had moved well beyond a casual and brief encounter.

[17] The interaction also was not a valid *Terry* stop. In support of the encounter being a valid *Terry* stop, the State contends Bracewell walked away from Officer Handley in a "high-crime area." Brief of Appellant at 23. The State also contends Seymour police officers received information Bracewell was involved in drug activity at the hotel. These facts do not provide reasonable suspicion to conduct a *Terry* stop.

[18] The State provided no evidence at the suppression hearing supporting its contention that the area in which Officer Handley found Bracewell was a high-crime area. Regardless, a person's presence in a high-crime area combined with walking away from an officer are not sufficient to provide reasonable suspicion. *Jacobs v. State*, 76 N.E.3d 846, 850 (Ind. 2017). The information Seymour police officers received concerning Bracewell's alleged drug activity was from "[p]rior to this night." Br. of Appellant at 23. On the night in question, Officer Handley simply observed Bracewell walk through a hotel parking lot towards Officer Handley's vehicle and then turn around. Officer Handley observed nothing illegal and had received no reports of illegal activity at that time. In

light of these facts, we cannot say Officer Handley held more than an unparticularized suspicion. As a result, Officer Handley lacked reasonable suspicion to conduct a valid *Terry* stop.

[19]     The correct characterization of the officers' interaction with Bracewell is a seizure. Officer Handley questioned and accused Bracewell and then conducted a physical pat-down of him while two more officers arrived at the scene. Additionally, once three fully-uniformed officers were there, Officer Handley told Bracewell that Officer McMindes would stand with him while Officer Handley retraced his route. In light of these facts, we cannot say a reasonable person in Bracewell's position would feel free to leave. Further, Bracewell submitted to the officers' show of authority when he raised his hands to show they were empty. Because Officer Handley lacked reasonable suspicion, he also lacked the probable cause necessary to lawfully seize Bracewell. Therefore, Bracewell was unlawfully seized at the top of the stairwell before Officer Handley found the marijuana cigarette.

[20]     The State's contention that Bracewell might have abandoned the marijuana cigarette while walking up the stairs, and therefore before being seized, is an invitation to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *See Estep*, 753 N.E.2d at 25. Officer Handley found the marijuana cigarette just inches away from Bracewell's driver's license. The trial court could have reasonably concluded Bracewell dropped the marijuana cigarette at the same time he dropped his driver's license, after being unlawfully seized. Therefore, even if the marijuana cigarette is considered abandoned, it

would not be admissible because property abandoned after an unlawful seizure is not admissible. *See Campbell*, 841 N.E.2d at 627. As a result, the trial court did not err in suppressing the marijuana cigarette.

## B. Gun, Methamphetamine, and Scales

[21] The State similarly argues the trial court erred in suppressing the gun, methamphetamine, and scales. The State contends Bracewell abandoned the bag and case containing those items before any seizure occurred because Officer Handley found the bag and case in a location consistent with Bracewell dropping them while walking away from Officer Handley. The State contends the bag and case remained in a public area for at least ten minutes where anyone could have found them. As a result, Bracewell lost any expectation of privacy in them. We agree with the State's argument this evidence was abandoned property.

[22] Bracewell contends he dropped the bag and case in response to the officers' illegal conduct.[2] However, Officer Handley never saw Bracewell holding the bag or case while talking to him at the top of the stairwell. Further, Officer Handley found the bag on the ground on the opposite side of the stairwell and the case balanced on a small ledge nearby. Based on their location, and because Officer Handley never saw Bracewell holding these large items, it is

---

[2] For the purpose only of suppression and this appeal, Bracewell concedes the evidence supports the inference he is the owner of the bag and case.

highly unlikely Bracewell dropped the bag and case from the top of the stairwell. Therefore, unlike the marijuana and driver's license, Bracewell must have dropped the bag and case before being seized at the top of the stairwell.

The question then becomes whether Bracewell abandoned the bag and case or retained a reasonable expectation of privacy in them at the time of the search. *Machlah*, 505 N.E.2d at 879. Bracewell argues he placed the bag and case in a location where he intended them to be hidden from law enforcement. However, Bracewell placed the bags in plain view next to the exterior stairwell of a hotel where the police, or anyone else, could find them. Regardless of Bracewell's intent, there was nothing stopping the police from finding the bag and case in that location and Bracewell did not retain an expectation of privacy in them. *See United States v. Thomas*, 864 F.2d 843, 846 (D.C. Cir. 1989) (holding a defendant who left his gym bag on the floor of a public hallway in an apartment building and walked down the stairs surrendered his expectation of privacy). As a result, the bag and case are appropriately considered abandoned property. Since Bracewell abandoned the bag and case before his unlawful seizure, the trial court erred in suppressing the gun, methamphetamine, and scales found therein.

## III. Items on Bracewell's Person

The State also contends the trial court erred in suppressing the cash and key cards Officer McMindes found on Bracewell's person. The State argues Officer McMindes found the money and key cards during a search incident to a lawful

arrest because Officer Handley's discovery of the marijuana cigarette provided probable cause for Bracewell's arrest. We disagree.

[25]     Officers may conduct a search without a warrant if it is incidental to a lawful arrest. *Townsend v. State*, 460 N.E.2d 139, 141 (Ind. 1984). The "fruit of the poisonous tree" doctrine bars the admission of evidence "directly obtained by [an] illegal search or seizure as well as evidence derivatively gained as a result of information learned or leads obtained during that same search or seizure." *Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013). To invoke the doctrine, a defendant must first prove a Fourth Amendment violation and then must show the evidence was a "fruit" of the illegal search. *Id.* But the exclusion of evidence is not the result of a simple "but for" test. *Jackson v. State*, 996 N.E.2d 378, 384 (Ind. Ct. App. 2013), *trans. denied*. The doctrine has no application where (1) "evidence [is] initially discovered during, or as a consequence of, an unlawful search, but [is] later obtained independently from activities untainted by the initial illegality," *Murray v. United States*, 487 U.S. 533, 537 (1988) (independent source); (2) "the information ultimately or inevitably would have been discovered by lawful means," *Nix v. Williams*, 467 U.S. 431, 444 (1984) (inevitable discovery); or (3) "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint,'" *Wong Sun v. United States*, 371 U.S. 471, 487 (1963) (citation omitted) (attenuation). The burden is on the State to prove one of these exceptions applies. *Clark*, 994 N.E.2d at 266, 272.

As discussed above, Bracewell was unlawfully seized at the top of the stairwell and has shown a Fourth Amendment violation occurred. As a result of that violation, Officer Handley found the marijuana cigarette. Officer Handley then used the marijuana cigarette as the basis for probable cause to arrest Bracewell. Officer Handley only had probable cause for Bracewell's arrest because of an unlawful seizure. The State does not argue the evidence found on Bracewell's person fits into one of the exceptions, instead insisting Bracewell's arrest was lawful. However, Bracewell demonstrated a Fourth Amendment violation occurred and the evidence found on his person were fruits of that violation. The State had the burden of showing the evidence fits into one of the exceptions. Given the police did not have probable cause until after the unlawful seizure, coupled with the State's failure to meet its burden of showing one of the exceptions applies, we conclude the trial court properly suppressed the cash and key cards found on Bracewell's person.

## IV. Bracewell's Statements

Lastly, the State contends the trial court erred in suppressing Bracewell's statements. Bracewell's first statement at issue occurred at the top of the stairwell, when he denied possession of the marijuana cigarette, bag, and case. The next statement at issue occurred while Officer McMindes transported Bracewell to the police station, when Bracewell admitted dropping the marijuana cigarette. Bracewell's last statement at issue came the following day at the police station, when Bracewell told Officer Handley that he had him "dead in rights."

The State argues Bracewell made all his statements voluntarily after a lawful arrest. Alternatively, the State argues if Bracewell's arrest was unlawful, the taint of unlawful conduct dissipated before Bracewell's statements. If that is true, then the evidence is admissible under the attenuation exception to the fruit of the poisonous tree doctrine. The State contends there were intervening circumstances between the unlawful conduct and Bracewell's statements because Officers Handley and McMindes read Bracewell his *Miranda* warnings before Bracewell voluntarily spoke. Further, the State contends no officers committed additional flagrant misconduct to exploit the unlawful seizure. As a result, the State alleges the taint of unlawful conduct dissipated before Bracewell's statements and they are therefore admissible. We disagree.

As discussed above, Bracewell's seizure was unlawful and all of his statements at issue followed his unlawful seizure. Therefore, the State must rely on its argument that the fruit of the poisonous tree doctrine does not apply to Bracewell's statements because they fall under the attenuation exception. In determining whether the connection has become attenuated, courts generally consider "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Sanchez v. State*, 803 N.E.2d 215, 221 (Ind. Ct. App. 2004) (quoting *United States v. Green*, 111 F.3d 515, 521 (7th Cir. 1997)), *trans. denied*. The important consideration in the third factor is whether the evidence came from the "'exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Quinn v. State*,

792 N.E.2d 597, 600 (Ind. Ct. App. 2003) (quoting *Wong Sun*, 371 U.S. at 488), *trans. denied*.

[30] The State concedes very little time elapsed between the unlawful conduct and Bracewell's statements. Br. of Appellant at 34. The first two statements came immediately after Bracewell's unlawful arrest, and the last came the next day while Bracewell was still in custody. Bracewell made all the statements at issue within twenty-four hours of his unlawful seizure.

[31] As to the presence of intervening circumstances, the State also concedes *Miranda* warnings alone are not sufficient to purge the taint of an illegal arrest. *Id.* at 33. The fact that Bracewell's statements were voluntary also does not purge the taint of the unlawful seizure. In *Turner v. State*, 862 N.E.2d 695 (Ind. Ct. App. 2007), a detective carried out an unlawful traffic stop on Dennis Turner. After speaking with the detective at the scene, Turner agreed to talk more at the sheriff's department. Turner rode to the sheriff's department in the detective's vehicle but was never handcuffed. After receiving *Miranda* warnings, Turner voluntarily made a recorded statement. Still, this court suppressed Turner's statement, emphasizing the "near-constant interaction between Turner and police." *Id.* at 702. Likewise, in this case, Bracewell remained in near-constant interaction with the police from the time of his unlawful seizure to the time he made the final statement at issue. Additionally, Officer McMindes actually arrested and handcuffed Bracewell before Bracewell made any of the statements. Therefore, as in *Turner*, the *Miranda* warnings and

voluntariness of Bracewell's statements are insufficient to purge the taint of the unlawful seizure.[3]

[32] In regard to the purpose and flagrancy of the official misconduct, the State argues misconduct requires more than "the mere absence of proper cause for the seizure." *Utah v. Strieff*, 136 S.Ct. 2056, 2064 (2016). In *Strieff*, an officer conducting a "bona fide investigation of a suspected drug house" observed Edward Strieff leaving the house. *Id.* at 2063. The officer previously received an anonymous tip regarding the house and corroborated the tip with personal observation. The officer unlawfully seized Strieff in order to uncover more information about the house. The officer committed no further unlawful activity, but found methamphetamine and paraphernalia on Strieff's person. The Utah Supreme Court suppressed the methamphetamine and paraphernalia. The United States Supreme Court reversed, noting "neither the officer's alleged purpose nor the flagrancy of the violation rise to a level of misconduct to warrant suppression," as well as the presence of other intervening circumstances. *Id.* at 2064.

[33] As in *Strieff*, the police officers here did not commit further unlawful conduct after the unlawful seizure. However, unlike the officer in *Strieff*, Officer Handley unlawfully seized Bracewell for the purpose of questioning and

---

[3] The State does not contend the discovery of the meth, scales, and the gun constitute intervening circumstances giving the officers probable cause to arrest Bracewell and we decline to develop that argument on its behalf. *Baniaga v. State*, 891 N.E.2d 615, 620 n.9 (Ind. Ct. App. 2008). While we may affirm on any ground, we may only reverse on arguments presented by a party.

accusing Bracewell of illegal activity, not to further some other bona fide investigation. The State emphasizes the lack of further misconduct by the officers in this case, but ignores the purpose of the unlawful seizure. In light of the purpose of Bracewell's seizure, the third factor considered in the attenuation analysis is less favorable to the State than in *Strieff*. Meanwhile, the other two factors weigh in Bracewell's favor.

[34] In sum, considering the short time that elapsed between Bracewell's unlawful arrest and his statements, his near-constant interaction with officers, and the purpose of the seizure, we cannot say the trial court erred in suppressing Bracewell's statements.

# Conclusion

[35] Concluding the trial court properly suppressed the marijuana cigarette found on the ground, the cash and key cards found on Bracewell's person, and Bracewell's statements, but erred in suppressing the gun, methamphetamine, and scales found in the stairwell, we affirm in part, reverse in part, and remand for further proceedings.

[36] Affirmed in part, reversed in part, and remanded for further proceedings.

Vaidik, C.J., and Bailey, J., concur.