Willie CAMPBELL, III, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–0504–CR–171.

Court of Appeals of Indiana.

Feb. 1, 2006.

Ray L. Szarmach, Merrillville, for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

ROBB, Judge.

Willie Campbell, III, was found guilty following a jury trial of carrying a handgun without a license as a Class C felony. Campbell now appeals his conviction. We affirm.

### Issues

Campbell raises two issues for our review, which we restate as follows:

1. Whether the trial court properly denied Campbell's motion to suppress the handgun seized at the time of his arrest; and

2. Whether the State presented sufficient evidence to support Campbell's conviction for carrying a handgun without a license.

### Facts and Procedural History

On October 28, 2004, between the hours of 11:00 p.m. and 12:00 a.m., six officers of the Gary Police Department who were part of the uniform crime task force were patrolling the area of 11th Avenue and Marshall Street in Gary, Indiana. The officers were traveling in a convoy of three vehicles. Lieutenant Charles Austin was in the first vehicle, an unmarked Toyota 4Runner. The second vehicle was a marked police car driven by Officer Calvin Curington, and the third vehicle was an unmarked Crown Victoria. The officers had made an arrest in the area earlier that evening and had returned to investigate an anonymous tip from a police hotline concerning drug activity.

As the officers approached the residence located at 2714 West 11th Avenue, Lieutenant Austin saw two individuals standing behind a car parked in the front yard of the home. One of the individuals, who was wearing a white shirt and was later identified as Campbell, began to move. Lieutenant Austin radioed this information to the other officers, and Officer Curington shined his squad car's spotlight on Campbell. When the light hit him, Campbell crouched down, pulled something shiny from his waistband, and threw the object underneath the car he was standing behind.

The officers then exited their vehicles, approached Campbell, and asked him for identification. While this was occurring, a woman came out of the residence, and Lieutenant Austin asked her for identification. He determined that she was the owner of the vehicle that was parked in the front yard, and asked her if he could have the keys to the vehicle. The woman gave Lieutenant Austin the keys, and he backed the vehicle up. Underneath the car, the officers found a silver Bryco .25 caliber semi-automatic handgun.

While at the scene, Officer Curington asked Campbell if he had a gun permit, and he said he did not. He also asked Campbell where he lived, and Campbell said that he lived at 3439 Connecticut Street in the Glen Park area of Gary, which is roughly fifteen miles away from 2714 West 11th Avenue. Officer Curington testified that Campbell did not say that 2714 West 11th Avenue was his property or his place of business. The State later charged Campbell with carrying a handgun without a license as a Class C felony.[1]

Prior to trial, Campbell filed a motion to suppress the handgun, and the trial court denied his motion. On February 7, 2005, Campbell's jury trial began. During the trial, Campbell objected when the State

---

1. Carrying a handgun without a license is generally a Class A misdemeanor, but because Campbell had been convicted of a felony within the last fifteen years, pursuant to Indiana Code section 35–47–2–23(c)(2)(B), the State raised the charge to a Class C felony.

sought to admit the handgun into evidence, and the trial court overruled the objection. The jury ultimately found Campbell guilty of carrying a handgun without a license as a Class C felony and this appeal ensued.

### Discussion and Decision

#### I.   Motion to Suppress

Campbell first argues that the trial court erred when it denied his motion to suppress the handgun that was recovered at the time of his arrest. We disagree.

#### A.   Standard of Review

Campbell did not seek an interlocutory appeal after the denial of his motion to suppress, but instead proceeded to trial where he made an objection to the admission of the handgun. In this procedural posture, "the issue is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State*, 784 N.E.2d 584, 587 (Ind.Ct.App.2003).

■■■ A trial court has broad discretion in ruling on the admissibility of evidence *Id.* We will only reverse a trial court's ruling on the admissibility of evidence when the trial court has abused its discretion. *Id.* A trial court abuses its discretion when it makes a decision "that is clearly against the logic and effect of the facts and circumstances before the court." *Id.*

#### B.   Abandoned Property

■ Campbell contends that the trial court erred in admitting the handgun because it was discovered pursuant to an investigatory stop that was made without reasonable suspicion, and thus, was in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Campbell's arguments are premised upon the assumption that he was seized when the police shined a spotlight on him. He asserts that because he abandoned the gun after the police improperly seized him, the gun was inadmissible.

■ We have previously stated, "Abandoned property is not subject to Fourth Amendment protection. However, if property is abandoned after a citizen is improperly detained, the evidence is not admissible." *Wilson v. State*, 825 N.E.2d 49, 51 (Ind.Ct.App.2005). The question presented, which appears to be an issue of first impression in this state, is whether Campbell was seized when the police spotlight illuminated him. If Campbell was seized when he was illuminated with the spotlight and the police lacked reasonable suspicion to conduct an investigatory stop, then the gun was inadmissible because it was abandoned after Campbell was improperly detained. But, if Campbell was not seized when he was illuminated with the spotlight, then the gun was abandoned property not protected by the Fourth Amendment or Article 1, Section 11 and was admissible.

■ Using the same language, the Fourth Amendment and Article 1, Section 11 guarantee an individual's right to be free from unreasonable searches and seizures. By their very terms, the safeguards afforded by these provisions only apply when an individual has been seized. A person is seized when, by means of physical force or a show of authority, a police officer has in some way restrained the liberty of a citizen. *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The Supreme Court has concluded that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* Our supreme court applies the same standard. *See Chappel v. State*, 591 N.E.2d

1011, 1014 (Ind.1992) ("The test used to determine when the encounter has become a seizure is whether considering all the circumstances surrounding the encounter the defendant entertained a reasonable belief that he was not free to leave.").

We first consider two significant cases decided by the United States Supreme Court. In *Texas v. Brown*, 460 U.S. 730, 739–40, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Court held that the shining of a flashlight by a law enforcement officer did not constitute an illegal search or seizure. In a case decided during the prohibition era, the Court determined that a Coast Guard sailor shining a spotlight on a boat and seeing barrels of alcohol did not violate the Constitution. *United States v. Lee*, 274 U.S. 559, 563, 47 S.Ct. 746, 71 L.Ed. 1202 (1927). Both of these cases suggest that the shining of a spotlight, in certain situations, would not violate the Fourth Amendment.

In addressing the issue presented here, several courts in other states have concluded that illumination of an individual by the police with a spotlight did not constitute a seizure. *See State v. Baker*, 141 Idaho 163, 107 P.3d 1214, 1218 (2004) (use of spotlight to illuminate Baker's car did not constitute a seizure); *State v. Justesen*, 47 P.3d 936, 939 (Utah Ct.App.2002) (officer's use of take-down lights was not meant as a show of authority but to illuminate the area and did not indicate that motorist was not free to leave); *State v. Clayton*, 309 Mont. 215, 45 P.3d 30, 35 (2002) (police officer's shining a spotlight into Clayton's vehicle did not amount to such a showing of authority that a reasonable person would have believed he or she was not free to leave); *State v. Young*, 135 Wash.2d 498, 957 P.2d 681, 688–89 (1998) (illumination by the spotlight did not amount to such a show of authority a reasonable person would have believed he or she was not

free to leave); *People v. Cascio*, 932 P.2d 1381, 1388 (Colo.1997) (court did not attribute any significance to the officer's use of a spotlight because it was used as a matter of practical necessity as the encounter took place as it was getting dark); *State v. Stuart*, 168 Ariz. 83, 811 P.2d 335, 338 (Ct.App.1990) (shining spotlight on vehicle did not constitute a seizure); *People v. Perez*, 211 Cal.App.3d 1492, 1496, 260 Cal.Rptr. 172 (1989), *trans. denied* (shining spotlight on vehicle did not manifest police authority to the degree that a reasonable person would conclude he was not free to leave). In each of these cases, in order to determine whether there was a seizure, the court looked at the totality of the circumstances to determine whether a reasonable person would have believed he or she was not free to leave.

In *Baker*, the Idaho Supreme Court offered a number of policy reasons for why the use of a spotlight should not constitute a seizure. The court pointed out that a spotlight could be used to illuminate an area allowing an officer to gain more information about the circumstances that he or she is confronting, which can significantly enhance officer safety. *Baker*, 107 P.3d at 1218. The court reasoned that a police officer should not be forced to choose between a consensual encounter, which would not implicate the protections of the Fourth Amendment, in the dark, or turning on a spotlight and thereby effectuating a seizure that may not be supported by reasonable suspicion. *Id.* The court rejected adopting a rule that an officer's use of a spotlight creates a per se seizure because such a rule would discourage officers from using such lights when necessary for their safety or the safety of others. *Id.*

Some courts, though, have concluded that when police illuminate an individual with a spotlight and also take some further

action, the individual has been seized. *See Commonwealth v. Mulholland*, 794 A.2d 398, 401–02 (Pa.Super Ct.2002) (court found that defendant was seized when officer shined spotlight on his vehicle and parked police cruiser in such a fashion that defendant could not drive his van out of the parking lot); *United States v. Packer*, 15 F.3d 654, 657 (7th Cir.1994) (defendant was seized when officers' vehicles were in front of and behind defendant's car with take down lights shining); *Mosby v. State*, 575 So.2d 304, 306 (Fla.Dist.Ct.App.1991) (defendant was seized based on position of police car, shining of spotlight, and the way officers approached the defendant's vehicle).

▮▮▮ After considering the analysis applied in *Baker, Justesen, Clayton, Young, Cascio, Stuart, Perez,* the Supreme Court's opinion in *Mendenhall,* and our supreme court's opinion in *Chappel,* we believe that in order to determine whether Campbell was seized when the police illuminated him with a spotlight we must consider all the circumstances surrounding the encounter and assess whether a reasonable person would have believed that he or she was not free to leave. In making this determination, we are guided by the Supreme Court's listing in *Michigan v. Chesternut*, 486 U.S. 567, 575, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), of a number of possible actions that an officer could take that would cause a reasonable person to conclude they have been seized: use of a siren or flashers, a command that the person halt, display of weapons, or operation of a police vehicle in an aggressive manner to either block the person's course or otherwise control the direction or speed of the person. Additionally, we have stated:

> Examples of circumstances under which a reasonable person would have believed he was not free to leave include the threatening presence of several officers, the display of a weapon by the officer, some physical touching of the person ..., or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Overstreet v. State*, 724 N.E.2d 661, 664 (Ind.Ct.App.2000), *trans. denied.*

Here, the officers were patrolling in the area of 11th Avenue and Marshall Street based on an anonymous tip that drug activity was occurring in the area. As the officers approached the residence located at 2714 West 11th Avenue, Lieutenant Austin saw Campbell and an unidentified individual standing behind a vehicle. Campbell started to move, and Officer Curington shined his spotlight on him. While illuminated by the spotlight, Campbell crouched down, pulled a shiny object from his waistband, and tossed the object underneath the car he was standing behind. The officers later determined that the object Campbell tossed under the car was a handgun.

At the time Campbell tossed the gun underneath the car, the police spotlight illuminated him. The police, though, did not have their sirens or flashers on at or before that time. The officers did not verbally order Campbell to stop, physically touch Campbell, or display their weapons before Campbell, prior to him throwing the gun under the car. When Campbell tossed the gun underneath the car, all six officers were still in their vehicles, and only one of those vehicles was a marked police car. Thus, Campbell was not threatened by the presence of several officers when he got rid of the gun.

Campbell seems to contend that the officers were operating their vehicles in an aggressive manner before he tossed the gun underneath the car. He asserts that at the time the spotlight was shined upon him, the officers drove their vehicles onto

the property of the residence. The testimony on this matter is not entirely clear, but it seems that only Lieutenant Austin's vehicle drove onto the property, and only after Campbell had gotten rid of the gun. The officers did not operate their vehicles in an aggressive manner to block Campbell's course prior to his tossing the gun away.

Based upon all of the circumstances surrounding the encounter here, we cannot say that the shining of a spotlight alone amounts to such a show of authority that a reasonable person would have believed that he or she was not free to leave. Therefore, at the time Campbell tossed the handgun underneath the car, he was not seized under the Fourth Amendment or Article 1, Section 11. The handgun was abandoned property not subject to the protections of the Fourth Amendment or Article 1, Section 11, and the trial court did not abuse its discretion by admitting it into evidence.

## II.  Sufficiency of the Evidence

Campbell next contends that the State failed to present sufficient evidence to support his conviction for carrying a handgun without a license. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or judge the credibility of witnesses. *Taylor v. State*, 820 N.E.2d 756, 759 (Ind.Ct.App. 2005), *trans. denied.* We consider only the evidence most favorable to the judgment and any reasonable inferences that can be drawn therefrom. *Id.* We will affirm a conviction where there is substantial evidence of probative value to support the judgment. *Id.* If a conviction is based on circumstantial evidence, we will not disturb the verdict if the fact finder could reasonably infer from the evidence presented that the defendant is guilty beyond a reasonable doubt. *Brown v. State*, 827 N.E.2d 149, 152 (Ind.Ct.App.2005).

To convict Campbell of carrying a handgun without a license as a Class C felony, the State was required to prove that Campbell carried a handgun on or about his body and was not at his dwelling, fixed place of business, or on his property, and that he had been convicted of a felony within fifteen years before the date of the offense. Ind.Code § 35–47–2–1(a); Ind. Code § 35–47–2–23(c)(2)(B). Campbell argues that the State failed to prove that he was not on his property or fixed place of business at that time he abandoned the gun.

Here, Officer Curington testified that he asked Campbell where he lived, and Campbell replied that he lived at 3439 Connecticut Street, which is fifteen miles away from 2714 West 11th Avenue where the gun was abandoned. Officer Curington also testified that Campbell did not say that the property was his or that it was his fixed place of business. While Officer Curington was talking with Campbell, Lieutenant Austin spoke with a woman who came out of the residence. The woman wanted to know what was going on and said that the car in the front yard belonged to her. She did not indicate that she knew Campbell. Based on this evidence, the jury could reasonably infer that the property did not belong to Campbell and was not his fixed place of business. Therefore, the State presented sufficient evidence to support Campbell's conviction for carrying a handgun without a license.

### Conclusion

Campbell was not seized under the Fourth Amendment or Article 1, Section 11 when the police shined a spotlight on him or when he tossed the gun underneath the car. The handgun was abandoned property and was properly admitted by the trial court. The State presented sufficient evidence to support Campbell's con-

viction for carrying a handgun without a license as a Class C felony. Campbell's conviction is therefore affirmed.

Affirmed.

KIRSCH, C.J., and MAY, J., concur.