## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 24 2016, 8:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John R. Watkins
Arata Law Firm
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bradley Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 24, 2016

Court of Appeals Case No.
92A04-1512-CR-2178

Appeal from the Whitley Superior Court

The Honorable Douglas M. Fahl, Judge

Trial Court Cause No.
92D01-1403-CM-111

**Bailey, Judge.**

# Case Summary

Bradley Smith ("Smith") appeals his conviction for Operating a Vehicle with an Alcohol Concentration Equivalent to At Least Eight-Hundredths (0.08) Gram of Alcohol but Less Than Fifteen-Hundredths (0.15) Gram of Alcohol, a Class C misdemeanor.[1]  We affirm.

# Issues

Smith presents two issues for our review:

I.    Whether the trial court abused its discretion in admitting evidence obtained during a consensual encounter with a police officer; and

II.    Whether the trial court abused its discretion in admitting the results of a chemical breath test.

# Facts and Procedural History

At around 3:00 p.m. on March 1, 2014, Whitley County Sheriff's Department Reserve Captain Timothy Johnson ("Officer Johnson") was off-duty and driving his personal car on Whitley Street in Churubusco.  Ahead he saw a woman, later identified as Joan Mourey ("Mourey"), walking rapidly on the sidewalk while nervously looking over her shoulder at a black truck driving

---

[1] Ind. Code § 9-30-5-1(a).

slowly beside her. From his position a few cars behind the truck, Officer Johnson saw the driver yelling at Mourey. The truck then turned onto a side street and stopped. Officer Johnson drove by, but continued to watch Mourey in his rearview mirror. After the traffic cleared, Mourey ran across the street. The driver of the truck, later identified as Smith, got out and pursued her.

[4] Officer Johnson turned his car around. As he drove back toward the scene, he saw Smith leading Mourey by her arm across the street toward the parked truck. Officer Johnson stopped and parked his car some distance from the truck and called 911 to request that dispatch send an on-duty officer. He then got out of his car, "hollered across the street," displayed his badge to identify himself, and said that he needed to speak to them. (Tr. 94.) As the officer approached, Smith started to get into the driver's seat, but then walked around to the passenger side.

[5] Mourey met Officer Johnson at the rear driver's side of the truck. Officer Johnson questioned Mourey "to make sure . . . that she wasn't being abducted or [subject to] some sort of domestic abuse." (Tr. 100.) He learned that Smith was her boyfriend and they had a verbal argument earlier that day. Officer Johnson asked several more questions to ascertain whether Mourey felt safe with Smith. Throughout the conversation, Smith was seated in the passenger seat and was yelling to Mourey through the open driver's side window "[t]hat she didn't have to talk to [the officer], that she needs to get back in the truck. That they could leave." (Tr. 100.) Mourey asked Officer Johnson if they could

leave, and Officer Johnson told Mourey they were not free to leave until the on-duty officer arrived.

[6] Churubusco Police Department Deputy Marshall Garry Jones ("Officer Jones") arrived approximately five minutes after he was dispatched. While Officer Jones spoke to Mourey, Officer Johnson went to the passenger side to speak to Smith and smelled an alcohol odor coming from the truck. Officer Jones then came over to speak with Smith and smelled an alcohol odor emanating from Smith. Officer Jones asked whether Smith had been drinking, and Smith admitted he had consumed four twelve-ounce cans of beer since about noon. The officers observed no other signs of intoxication or impairment.

[7] Officer Jones read Smith the Indiana implied consent law and accompanied Smith to the Whitley County Hospital for a blood draw. Smith then was taken to the Whitley County Jail, where Sergeant Cory Patrick ("Sergeant Patrick") administered a breath test using a BAC DataMaster machine. The breath test showed a blood alcohol concentration of 0.13 percent.

[8] On March 3, 2014, the State charged Smith with Operating a Vehicle While Intoxicated, as a Class A misdemeanor[2] ("Count 1"), and Operating a Vehicle with an Alcohol Concentration Equivalent to At Least Eight-Hundredths (0.08)

---

[2] I.C. § 9-30-5-2(b). Operating a vehicle while intoxicated is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person.

Gram of Alcohol but Less Than Fifteen-Hundredths (0.15) Gram of Alcohol ("Count 2").

[9] On May 14, 2014, Smith filed a motion to suppress, arguing that when Officer Johnson told Mourey they were not free to leave until Officer Jones arrived, Officer Johnson illegally seized Smith in violation of Smith's federal and state constitutional rights. The State filed a response on September 12, 2014 arguing that the encounter was consensual and Smith's constitutional rights were not implicated. The trial court held a hearing on August 4, 2014, and denied the motion to dismiss on October 24, 2014. The trial court found that Officer Johnson seized Mourey when he told her she could not leave, but as to Smith, found "there [was] no evidence that [Smith] was told that he was not free to leave" and thus Officer Johnson "did not prohibit [him] from leaving the scene." (App. 83.) Smith filed a motion to reconsider, which the trial court denied on November 5, 2014.[3]

[10] A bench trial was held on October 7, 2015. At trial, Smith renewed his constitutional objections, arguing that he was illegally seized both when Officer Johnson originally approached Smith and Mourey and after Officer Johnson told Mourey they were not free to leave until Officer Jones arrived. The trial

---

[3] Smith also filed a pre-trial motion to suppress the blood test results **(App. 98)**, and that motion was denied. **(App. 134.)** However, the State ultimately did not introduce the blood test results at trial.

court overruled the objections and, at the conclusion of trial, found Smith not guilty of Count 1 and guilty of Count 2. Smith now appeals his conviction.

# Discussion and Decision

## Constitutional Claims

[11]  Smith first argues that the trial court abused its discretion in denying his motion to suppress and admitting evidence discovered as a result of a warrantless seizure. Direct review of a motion to suppress is only proper when the defendant files an interlocutory appeal. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). Where, as here, a defendant's case proceeds to trial following the denial of a motion to suppress and the defendant renews his objection to the admission of the evidence, the appeal is best framed as challenging the admission of evidence at trial. *Id.* The admission of evidence is a matter left to the trial court's discretion. *Id.* at 259-60. We review the trial court's determinations of admissibility for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.* at 260. "[W]e do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling." *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010).

[12]  Using nearly identical language, the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution guarantee a

person's right to be free from unreasonable searches and seizures.[4] *Campbell v. State*, 841 N.E.2d 624, 627 (Ind. Ct. App. 2006). "A person is seized when, by means of physical force or a show of authority, a police officer has in some way restrained the liberty of a citizen." *Id.* (citing *U.S. v. Mendenhall*, 446 U.S. 544, 553 (1980)). Whether a police officer has detained a citizen depends on whether, under all the circumstances, a reasonable person would feel free to disregard the police and go about his or her business. *Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003) (citing *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). The test for whether police action constitutes a "seizure" is objective: we look not to whether the particular citizen actually felt free to leave, but to whether the officer's words and actions would have conveyed that to a reasonable person. *Clark*, 994 N.E.2d at 261. We apply the same analysis to determine whether a person is "seized" under the Fourth Amendment or Article 1, Section 11. *See Campbell*, 841 N.E.2d at 630 (using the same test, holding that defendant was not seized under the Fourth Amendment or Article 1, Section 11). *Accord Clarke v. State*, 868 N.E.2d 1114, 1121 (Ind. 2007) (Rucker, J., dissenting) (observing that "there is no 'seizure' within the meaning of the Indiana Constitution '[a]s long as the person to whom questions are put

---

[4] The Fourth Amendment provides, in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Article 1, Section 11 provides, in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated . . . ."

remains free to disregard the questions and walk away.'" (quoting *Mendenhall*, 446 U.S. at 554)).

[13] "Not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification." *Overstreet v. State*, 724 N.E.2d 661, 664 (Ind. Ct. App. 2000), *trans. denied*. When a law enforcement officer makes a casual and brief inquiry of a citizen that involves neither an arrest nor a stop, no Fourth Amendment interest is implicated. *Id.* at 663. As long as the person remains free to disregard a police officer's questions and walk away, there has been no intrusion upon that person's liberty. *Id.* Police actions that may lead a reasonable person to conclude he or she has been seized include: use of sirens or flashers, a command that the person halt, a display of weapons, or operation of a police car in an aggressive manner to either block the person's path or control the direction or speed of his movement. *Michigan v. Chesternut*, 486 U.S. 567, 575 (1988). Indiana courts have also stated:

> Examples of facts and circumstances that might lead a reasonable person to believe that he or she was no longer free to leave could include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person or the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."

*Clark*, 994 N.E.2d at 261-62 (quoting *Overstreet*, 724 N.E.2d at 664).

[14] Here, Officer Johnson was concerned that Mourey was being abducted or subject to domestic abuse, so he stopped and parked his personal car some distance from Smith's truck. The officer was dressed in plain clothes. As he

approached the couple on foot, he "hollered," showed his badge to identify himself, and said that he needed to speak to them. (Tr. 94.) Smith, who was getting into the driver's seat when Officer Johnson approached, circled around to the passenger side. Mourey then got out of the passenger seat and met Officer Johnson at the rear of the truck. While Mourey spoke to the officer, Smith sat in the passenger seat, shouting out the driver's side window "[t]hat she didn't have to talk to [the officer], that she needs to get back in the truck. That they could leave." (Tr. 100.) Officer Johnson then did not speak to Smith until Officer Jones arrived on scene.

[15] Officer Johnson's actions did not constitute a show of authority that would convey to a reasonable person that his or her movement was restricted. Indeed, when Smith heard and saw the officer approaching, he ignored Officer Johnson and walked to the other side of the truck. Officer Johnson did nothing to compel Smith to engage with him, and instead met and had a conversation with Mourey at the bed of the truck. The focus of Officer Johnson's inquiry was on Mourey, not Smith. Smith was not seized simply because an off-duty officer stood near the truck talking to Mourey. During that time, Smith could have left the scene; instead, he chose to get into the passenger seat and wait for Mourey.

[16] Smith argues, however, that he was illegally seized when Officer Johnson initially approached the couple while holding up his badge and hollering that he needed to speak to them. Smith relies primarily on *Dowdell v. State*, 747 N.E.2d 564 (Ind. Ct. App. 2001), *trans. denied*, in which we held that "[a] reasonable person when faced with a police officer pulling up to him in a marked vehicle

and calling for him to come over to the car would not assume that he can just turn and walk away." *Id.* at 567. However, unlike in *Dowdell*, Officer Johnson did not directly order Smith to come over to a marked police car. And after Smith ignored the officer's casual inquiry, Officer Johnson did not compel Smith's compliance. None of the circumstances that would lead a person to feel he was not free to leave – such as multiple officers, officer's display of a weapon, physical touching of the person, or a command to halt – existed here.

[17] Smith also argues that he was illegally seized when Mourey asked Officer Johnson if they were free to leave, and Officer Johnson said they were not. An officer's subjective intent to detain a person, had he or she attempted to leave, is irrelevant unless that intent was conveyed to the person. *Mendenhall*, 446 U.S. at 554 n.6. *See also Bentley v. State*, 779 N.E.2d 70, 75 (Ind. Ct. App. 2002) (officer's testimony that defendant was not free to leave was subjective and not relevant where intent was not conveyed).

[18] Officer Johnson made the statement to Mourey, not Smith, while they were standing behind the truck. Smith was sitting in the front passenger seat, and contends that the evidence supports the inference that he heard Officer Johnson's statement to Mourey. Specifically, Smith points to evidence that: (1) the driver's side window was rolled down; (2) Mourey and the officer were standing four to five feet behind the truck; and (3) Officer Johnson could hear Smith speaking from the truck. However, Smith's argument that the trial court could have inferred that Smith heard Officer Johnson's command is a request to reweigh the evidence, which we will not do. *Reinhart*, 930 N.E.2d at 45.

Because Officer Johnson did not convey his intent to Smith, the officer's statement to Mourey is irrelevant to whether a reasonable person in Smith's position would have felt free to leave. None-the-wiser to the officer's intent, Smith was in the same position as before Officer Johnson's statement to Mourey: free to leave.

Officers Johnson and Jones eventually spoke to Smith. However, nothing in the record shows that Smith's encounter with the police was anything other than consensual. Smith was not seized for the purposes of the Fourth Amendment or Article 1, Section 11 and therefore the trial court did not abuse its discretion in admitting evidence obtained as a result of his conversations with Officers Johnson and Jones.

## Admission of Chemical Breath Test Results

The admission of chemical breath test results is left to the sound discretion of the trial court and reviewed for an abuse of discretion. *Fields v. State*, 807 N.E.2d 106, 109 (Ind. Ct. App. 2004), *clarified on reh'g,* 811 N.E.2d 978, *trans. denied*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Wolpert v. State*, 47 N.E.3d 1246, 1247 (Ind. Ct. App. 2015), *trans. denied*. As the party offering the breath test results, the State bears the burden of establishing the foundation for admitting the results. *Id.*

Indiana Code section 9-30-6-5 governs the admissibility of chemical breath test results in operating while intoxicated ("OWI") proceedings. Section 9-30-6-5(a) provides that the director of the state department of toxicology shall adopt rules concerning (1) the standards and regulations for the selection, training, and certification of breath test operators; (2) the standards and regulations for the selection and certification of breath test equipment and chemicals; and (3) the certification of the proper technique for administering a breath test. I.C. § 9-30-6-5(a). The results of chemical breath tests are not admissible in an OWI proceeding if "(1) the test operator; (2) the test equipment; (3) the chemicals used in the test, if any; or (4) the techniques used in the test; have not been approved in accordance with the rules adopted" by the state department of toxicology. I.C. § 9-30-6-5(d).

## Approved Method for Administering Test

Smith first contends that the trial court erred in admitting the results of his chemical breath test because Sergeant Patrick did not follow the approved method for administering the test. Pursuant to Indiana Code section 9-30-6-5(a)(3), the state department of toxicology has promulgated an approved method for administering breath tests using the BAC DataMaster. 260 Ind. Admin. Code 2-4-1 (2015) (effective Feb. 8, 2014).[5] In relevant part, the administrative rule contains the following steps:

---

[5] The rule was filed on January 9, 2014 and effective thirty days after filing. *See* I.C. § 4-22-2-36(2).

STEP ONE: The person to be tested must:
    (A) have had nothing to eat or drink;
    (B) not have put any foreign substance into his or her mouth or respiratory tract; and
    (C) not smoke;
within fifteen (15) minutes before the time a breath sample is taken.

STEP TWO: The green LED on the instrument display must be glowing.

STEP THREE: Depress the run button, enter the password, and insert the evidence ticket.

STEP FOUR: Follow the displayed request for information, and enter the information by the keyboard.

STEP FIVE: When "please blow" appears on the display, place a new mouthpiece in the breath tube. Instruct the subject to deliver a breath sample.

260 I.A.C. 2-4-1(a).

[23] At trial, the State introduced into evidence a one-page document titled "Approved Method for the Administration of a Breath Test Using a BAC DataMaster with a Keyboard *Effective 01/02/2008*," which Sergeant Patrick used when administering the breath test to Smith on March 1, 2014.[6] (Exhibit

---

[6] The instructions Sergeant Patrick used listed the process, in relevant part, as:

    1. The person to be tested must:
        (A) have had nothing to eat or drink;
        (B) not have put any foreign substance into his or her mouth or respiratory tract; and

A-4.)  This form was a nearly-verbatim reproduction of the immediate past version of the approved method for administering BAC DataMaster breath tests, which was repealed and replaced with the current version in February 2014.  *See* 260 I.A.C. 1.1-4-8 (2013).

[24]  Smith points out two differences between the current version of the approved method and Sergeant Patrick's instructions.  Specifically, under step three, the instructions directed Sergeant Patrick to "insert the evidence ticket or verify that the external printer is ready to use" (Exhibit A-4), whereas the current rule instructs the user simply to "insert the evidence ticket."  260 I.A.C. 2-4-1(a).  Also, under step five, Sergeant Patrick's instructions stated: "The subject must deliver a breath sample."  (Exhibit A-4.)  The current rule states: "Instruct the subject to deliver a breath sample."  260 I.A.C. 2-4-1(a).

[25]  Smith argues that the test results were inadmissible under Indiana Code section 9-30-6-5(d) because Sergeant Patrick's instructions tracked the prior, not current, version of the administrative rule.  Smith relies on *Crouch v. State*, 638 N.E.2d 861 (Ind. Ct. App. 1994), in which a police officer administered a

---

(C) not smoke;
within twenty (20) minutes before the time a breath sample is taken.

2. The green LED on the instrument display must be glowing[.]

3. Depress the run button, enter the password, and insert the evidence ticket or verify that the external printer is ready for use.

4. Follow the displayed request for information, and enter by the keyboard.

5. When "please blow" appears on the display, place a new mouthpiece in the breath tube.  The subject must deliver a breath sample.

(Exhibit A-4.)

breath test to Crouch using a BAC DataMaster on August 17, 1991, approximately three weeks before the state department of toxicology filed a rule establishing an approved method of giving BAC DataMaster breath tests. *Id.* at 863. The trial court admitted the breath test results because the police officer had followed a method that was later approved. *Id.* at 864. On appeal, this Court reversed, noting that it could not "rationalize and approve the application of rules which have not been adopted in the manner provided by law." *Id.* Absent a method approved by the department of toxicology at the time the test was administered, the Court held that the results were inadmissible under Indiana Code section 9-30-6-5(d). *Id.*

[26] We find *Crouch* distinguishable. *Crouch* concerned the retroactive application of an administrative rule adopted after Crouch's breath test was conducted. Here, the state department of toxicology had adopted an approved method at the time Smith took his breath test, and the State introduced evidence of the method Sergeant Patrick used when administering Smith's test. As the State notes, the instruction sheet and the approved method are "functionally and substantively the same" as to steps three and five. (Appellee's Br. 27.) During step three, Sergeant Patrick inserted the evidence ticket,[7] and thus complied with the current rule. And we see no substantive difference between the passive statement in Sergeant Patrick's instructions that "[t]he subject must deliver a

---

[7] The evidence ticket was admitted as Exhibit A-5.

breath sample" (Exhibit A-4), and the active statement under the current rule that the user should "[i]nstruct the subject to deliver a breath sample." 260 I.A.C. 2-4-1(a). By obtaining Smith's breath sample during step five, Sergeant Patrick complied with the current rule.

[27] "Our courts have consistently held that the necessary foundation for admissibility of a breath test requires proof that the approved methods have been followed." *Crouch*, 638 N.E.2d at 864. Smith has failed to show that Sergeant Patrick did not strictly comply with the approved method promulgated by the state department of toxicology.

## Instrument Inspection and Compliance Certificate

[28] Smith next argues that the trial court erred in admitting the breath test instrument inspection and compliance certificate in the absence of trial testimony of the person who inspected the instrument.

[29] As discussed above, the department of toxicology director must adopt rules concerning the standards and regulations for the selection and certification of breath test equipment and chemicals. I.C. § 9-30-6-5(a). When equipment and chemicals are certified, the director shall issue and send certificates to the circuit court clerks. I.C. § 9-30-6-5(b). The statute also provides that certified copies of these certificates

> (1) are admissible in a proceeding under this chapter, IC 9-30-5 [OWI], IC 9-30-9, or IC 9-30-15;

(2) constitute prima facie evidence that the equipment or chemical:

> (A) was inspected and approved by the state department of toxicology on the date specified on the certificate copy; and

> (B) was in proper working condition on the date the breath test was administered if the date of approval is not more than one hundred eighty (180) days before the date of the breath test[.]  [. . . .]

I.C. §§ 9-30-6-5(c)(1)-(2).

[30]  At trial, the State sought to introduce a certificate of inspection and compliance ("the certificate") stating that the instrument used in Smith's breath test was inspected and tested on February 10, 2014, and "in good operating condition, satisfying the accuracy requirements set forth in 260 IAC 2-3-2."  (Exhibit A-3.) Smith objected on the grounds that he had the right to confront and cross-examine the certificate's preparer, who was not present to testify.  Smith's objection, however, was not based on the confrontation clause of the Sixth Amendment to the U.S. Constitution.[8]  Rather, Smith argued the certificate was a "laboratory report" and therefore Indiana Code chapter 35-36-11 provided

---

[8] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"  The right to confrontation guaranteed by the Sixth Amendment is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 406 (1965).  In *Crawford v. Washington*, 541 U.S. 36 (2004), the U.S. Supreme Court held that the confrontation clause bars admission of out-of-court, testimonial statements in criminal trials unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination.  *Id.* at 68.

him a statutory right to confront and cross-examine the person who prepared it. The trial court admitted the certificate over Smith's objection.

[31]  Chapter 35-36-11, a simple "notice-and-demand" statute, governs the time frame within which a defendant in criminal trials must exercise his or her confrontation rights when the prosecuting attorney seeks to introduce a laboratory report as evidence. Under the statute, the prosecutor must file a notice of intent to introduce a laboratory report, and the defendant must timely file a demand for confrontation if he or she wishes for the report's preparer to be present at trial for cross-examination. I.C. §§ 35-36-11-2 & -3. A prosecutor who does not comply with the notice requirement may not introduce the evidence unless the report's preparer is present to testify. I.C. § 35-36-11-4. A defendant who does not comply with the demand requirement waives the right to confront and cross-examine the person who prepared the report. I.C. § 35-36-11-5. The statute defines "laboratory report" as "a written report or affidavit relating to the results of a scientific test that is prepared for use at trial or to assist in a law enforcement investigation." I.C. § 35-36-11-1.

[32]  Following *Crawford* and its progeny, this Court has repeatedly held that breath test inspection certificates are nontestimonial and therefore do not implicate the Sixth Amendment right to confrontation. *Jones v. State*, 982 N.E.2d 417, 419-28 (Ind. Ct. App. 2013), *trans. denied*. In light of this authority, Smith argues that

the certificate is a laboratory report[9] and thus the notice-and-demand statute "gives Hoosiers greater rights to confrontation than those afforded under the Sixth Amendment." (Appellant's Br. 16.)

[33] Assuming, without deciding, that the certificate falls within the statutory definition of laboratory report, we disagree with Smith's conclusion that the statute confers a confrontation right where a constitutional right does not exist. As the U.S. Supreme Court has explained:

> In their simplest form, notice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial. [. . . .] The defendant *always* has the burden of raising his Confrontation Clause objection; *notice-and-demand statutes simply govern the* time *within which he must do so*.

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 326-27 (2009) (emphasis added) (citations omitted).

[34] We find persuasive the State's observation that because notice-and-demand statutes simply govern the timing of a confrontation clause objection, they properly "govern the application of the existing constitutional confrontation right" rather than expand the bounds of that right. (Appellee's Br. 32.) Because

---

[9] Neither the prosecuting attorney's notice of intent to introduce laboratory reports or Smith's demand for confrontation specified the laboratory reports at issue, but Smith argues the certificate falls within the statute's definition.

this Court has repeatedly held that there is no confrontation right with respect to breath test certificates of inspection, *Jones*, 982 N.E.2d at 419-28, we do not believe the legislature intended the laboratory report notice-and-demand statute to extend a confrontation right beyond the Sixth Amendment guarantee.

[35] Moreover, there is a presumption that the legislature, in enacting a piece of legislation, is aware of existing statutes on the same subject. *WorldCom Network Servs., Inc. v. Thompson*, 698 N.E.2d 1233, 1239 (Ind. Ct. App. 1998), *trans. denied*. "[W]hen general and specific statutes conflict in their application to a particular subject matter, the specific statute will prevail over the general statute." *Id.* Here, the legislature has enacted a specific statute governing the admissibility of chemical breath test results in OWI proceedings, I.C. § 9-30-6-5, and a more general statute governing the introduction of a "laboratory report" as evidence in a criminal trial. I.C. § 35-36-11-1 *et seq.* To the extent the two statutes may overlap, the more specific statute should apply.

[36] The trial court did not abuse its discretion in admitting the breath test instrument certificate of inspection and compliance.

# Conclusion

[37] The trial court did not abuse its discretion in admitting evidence obtained during Smith's consensual encounter with the police or the results of Smith's chemical breath test.

[38]    Affirmed.

Bradford, J., and Altice, J., concur.