## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 31 2019, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Isabella H. Bravo
Monroe Co. Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

L.L.,
*Appellant,*

v.

State of Indiana,
*Appellee.*

May 31, 2019

Court of Appeals Case No.
18A-JV-2768

Appeal from the Monroe Circuit Court

The Honorable Stephen R. Galvin, Judge

Trial Court Cause No.
53C07-1808-JD-610

**Pyle, Judge.**

# Statement of the Case

L.L. ("L.L.") appeals the juvenile court's true finding that he committed a delinquent act, which, if committed by an adult, would constitute Class A misdemeanor conversion.[1] Specifically, the juvenile court concluded that L.L. had exercised unauthorized control over Robert Drew's ("Drew") personal checks ("the Checks"). L.L., however, argues that the juvenile court abused its discretion when it admitted the Checks into evidence. Findings no abuse of the court's discretion, we affirm L.L.'s adjudication as a delinquent child.

We affirm.

# Issue

Whether the juvenile court abused its discretion in admitting the Checks into evidence.

# Facts

In the early morning hours of June 26, 2018, residents from Bloomington's Stonegate neighborhood contacted the police three times to report three suspicious males walking around the neighborhood. Bloomington Police Department Officer Matthew Lucas ("Officer Lucas") was dispatched to the neighborhood at 12:40 a.m. and again at 2:30 a.m. but was unable to find the three males. The third and final dispatch at 4:17 a.m. reported that a handgun

---

[1] IND. CODE § 35-43-4-3.

had just been stolen from a parked vehicle in the area. Officer Lucas returned to the neighborhood and noticed three young men walking in the middle of the street.

[4] One of the young men ran when he noticed Officer Lucas' marked police vehicle. L.L. and the other young man turned and walked in opposite directions. Because the three young men had dispersed to different places, Officer Lucas, who remained in his car, turned on his white spot light to illuminate the area. The officer immediately noticed L.L., who was approximately twenty yards away, reach into his pockets, pull items out, and drop them on the sidewalk and in a yard. Officer Lucas also noticed the other young man reach into his waistband and pockets. Concerned about the stolen firearm, Officer Lucas exited his vehicle, identified himself as a police officer, and loudly ordered the two young men to walk towards his marked police vehicle.

[5] Officer Lucas, who found a handgun during a pat down of the second young man, secured him and L.L. He then walked to the area where he had seen L.L. dropping items out of his pockets and found two personal checks and a flashlight. The first check was written from William Shobe to Jeb Drew ("Jeb") and was dated December 25, 2017, and the other was a blank check from Kipley Drew with "void" written on it.

[6] Later that morning, Drew noticed that his wallet and two checks were missing from his vehicle, which had been parked in the Stonegate neighborhood. The

first check was one that his grandfather, William Shobe, had written to Drew's brother, Jeb. Jeb had apparently left the check at his grandfather's house, and the grandfather gave the check to Drew to return to his brother. The second check was a void check that Drew's mother had given him to use the routing number for his electric bill.

[7] The State filed a delinquency petition alleging that L.L. had committed unauthorized entry of a motor vehicle, a Class B misdemeanor if committed by an adult, and conversion, a Class A misdemeanor if committed by an adult. L.L. filed a motion to suppress the Checks. The juvenile court denied the motion after a hearing.

[8] At the hearing on the delinquency petition, Officer Lucas testified as follows during cross examination:

> So my lights were activated, once the male um took off and both um [L.L.] and [the other young man] started splitting off into yards, um once they had reached the grass, I activated my light. It wasn't an emergency, it was just a large bright flood light uh just to illuminate the street uh at that point I exited my vehicle, once I started seeing him pull the objects out of his pockets and dump them on the ground, I had a better idea of what was going on at that point uh so I started giving loud verbal commands to come back to my vehicle. . . . Um so my headlights were on as I pulled behind them. Um I didn't activate my uh the large deck light on the front of my vehicle, I did not activate that um until as I said the male was running off and then both [the other young man] and [L.L.] started walking into the yards, digging into their pockets and abandoning property onto the sidewalk and the residential yards. . . . Um as soon as both males reached the sidewalks, as I said, and started dumping property out, I had a

general idea of what was going on. I was suspicious, or had
suspected one of the males as possibly having the stolen handgun
from that area, uh so at that point, I began giving loud verbal
commands to come back to my vehicle.

(Tr. Vol. 2 at 15, 23, 26).

[9] The juvenile court adjudicated L.L. to be a delinquent child for committing a
delinquent act, which, if committed by an adult, would have constituted Class
A misdemeanor conversion. L.L. now appeals.

# Decision

[10] At the outset we note that L.L. did not seek an interlocutory appeal after the
juvenile court denied his motion to suppress. Instead, he proceeded to the
delinquency hearing where he objected to the admission of the Checks into
evidence. In this procedural posture, the appellate issue is framed as whether
the trial court erred in admitting evidence. *See Campbell v. State*, 841 N.E.2d
624, 627 (Ind. Ct. App. 2006).

[11] A juvenile court has broad discretion in ruling on the admissibility of evidence.
*B.K.C. v. State*, 781 N.E.2d 1157, 1162 (Ind. Ct. App. 2003). We will only
reverse a ruling on the admissibility of evidence when the juvenile court has
abused its discretion. *Id.* An abuse of discretion occurs when the trial court's
decision is clearly against the logic and effect of the facts and circumstances
before the court. *Campbell*, 841 N.E.2d at 627.

[12]     L.L. argues that the juvenile court erred in admitting the Checks into evidence because they were discovered pursuant to an investigatory stop that Officer Lucas made without reasonable suspicion. Thus, according to L.L., the stop violated the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The State responds that the Fourth Amendment and Article 1, Section 11 were not implicated because L.L. abandoned the Checks. The State is correct.

[13]     Abandoned property is not subject to protection under the Fourth Amendment or Article 1, Section 11. *Campbell*, 841 N.E.2d at 627. Abandonment rests upon whether the defendant so relinquished his interest in the property that he no longer maintained a reasonable expectation of privacy in it at the time of the seizure. *See State v. Machlah*, 505 N.E.2d 873, 879 (Ind. Ct. App. 1987), *trans. denied*.

[14]     For example, in *Campbell*, 841 N.E.2d at 624, officers were patrolling a neighborhood based on a tip that drug activity was occurring in the area. As they approached a residence, they noticed Campbell standing behind a vehicle. When he started to move, one of the officers shined a spotlight on him. While illuminated by the spotlight, Campbell crouched down, pulled an object from his waistband, and tossed it under the car he had been standing behind. The officers later determined that the object that Campbell had tossed under the car was a handgun.

[15] After Campbell had been convicted of Class C felony carrying a handgun without a license, he appealed and argued that the trial court had erred in admitting the handgun into evidence over his objection. Campbell specifically contended that the investigatory stop that led to the discovery of the handgun was made without reasonable suspicion and therefore violated the Fourth Amendment and Article 1, Section 11.

[16] This Court pointed out that Campbell's argument was premised upon the assumption that he was seized when the police shined a spotlight on him. *Campbell*, 841 N.E.2d at 627. We noted that a person is seized when, by means of physical force or a show of authority, a police officer has in some way restrained the liberty of a citizen. *Id.* We further noted that our review of the circumstances surrounding the encounter revealed that at the time Campbell tossed the gun underneath the car, the police had only illuminated a spotlight. *Id.* at 629. The police had not used their sirens or flashers and had not verbally ordered Campbell to stop. *Id.* In addition, the officers had not physically touched Campbell or displayed their weapons before Campbell had tossed the gun underneath the car. *Id*. We also pointed out that all six officers were still in their vehicles, and only one of those vehicles was a marked police car. *Id*.

[17] Based on these circumstances surrounding the encounter, we could not say that the shining of the spotlight alone amounted to a show of such authority that a reasonable person would have believed that he was not free to leave. *Id.* at 630. We therefore concluded that, at the time Campbell had tossed the handgun underneath the car, he had not been seized under the Fourth Amendment or

Article 1, Section 11. *Id.* We further concluded that the handgun was abandoned property not subject to the protections of the Fourth Amendment or Article 1, Section 11, and the trial court did not abuse its discretion by admitting it into evidence. *Id.*

[18] The facts before us are analogous to those in *Campbell*. Here, Officer Lucas was patrolling the Stonegate Neighborhood based on a tip about three suspicious young men. As Officer Lucas approached the young men, one of them ran away. The other two walked in opposite directions, and Officer Lucas shined his spotlight on the area. While illuminated by the spotlight, L.L. pulled objects from his pockets and threw them on the ground. Officer Lucas later determined that two of the objects were Drew's personal checks.

[19] At the time L.L. dropped the Checks on the ground, Officer Lucas had only illuminated the spotlight. The officer had not activated the sirens or flashers before that time. He had not verbally ordered L.L. to stop or displayed his weapon to L.L before L.L. had thrown the checks on the ground. Further, Officer Lucas had remained in his car until after L.L. had thrown the checks on the ground.

[20] Here, as in *Campbell*, based on the circumstances surrounding the encounter, the shining of the spotlight alone did not amount to such a show of authority that a reasonable person would have believed that he was not free to leave. Therefore, at the time L.L. threw the checks on the ground, he was not seized under the Fourth Amendment or Article 1, Section 11. *Id.* We further

conclude that the Checks were abandoned property not subject to the protections of the Fourth Amendment or Article 1, Section 11, and the trial court did not abuse its discretion by admitting them into evidence.[2] *Id.*

Affirmed.

Riley, J., and Bailey, J., concur.

---

[2] L.L. directs us to additional testimony from Officer Lucas that L.L. claims supports his argument that he dropped the Checks after the officer had seized him. However, our review of this testimony reveals that L.L. has misinterpreted it. Specifically, this testimony is consistent with both the officer's previous and subsequent testimony that L.L. began dropping items after the officer turned on the spotlight but before the officer exited his vehicle, identified himself as a police officer, and ordered the young men to walk towards his vehicle.